## CHEMICAL SPECIALTIES MANUFACTURERS ASSOCIATION, INC., Plaintiff–Appellant,

v.

## Clifford L. ALLENBY; John K. Van De Kamp, Esq., Defendants–Appellees.

No. 90–16485.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1991.

Decided March 11, 1992.

942

Charles A. O'Connor, III, McKenna & Cuneo, Washington, D.C., for plaintiff-appellant.

Edward G. Weil and Clifford Rechtschaffen, Deputy Attys. Gen., Oakland, Cal., for defendants-appellees.

Before HUG, HALL and O'SCANNLAIN, Circuit Judges.

HUG, Circuit Judge:

Chemical Specialties Manufacturers Association, Inc. ("CSMA") filed this action below seeking a declaratory judgment that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y (1988), and the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261–1277 (1988), preempt Proposition 65 warning requirements. The State of California filed an opposition. The district court found that no genuine issues of material fact existed, and entered a Memorandum–Decision and Order on September 11, 1990, granting the State of California's motion for summary judgment. 744 F.Supp. 934. This appeal followed and we affirm.

## I. FACTS

CSMA is a national trade association of insecticide, disinfectant, and antimicrobial product manufacturers who sell their products to consumer, institutional, and industrial users. Many of the products manufactured by CSMA members are regulated under either FIFRA or FHSA. Both FIFRA and FHSA have express preemption provisions that prohibit certain types of state regulation, including labeling requirements on products regulated under the Acts.

The California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") requires California to list substances that it determines to be carcinogenic or reproductively toxic. Twelve months after a substance has been listed by the state, the manufacturers of products containing the listed substances must provide adequate warnings to the consuming public that their products pose a health risk. CSMA contends that the adequate warning requirements of Proposition 65, as applied to products regulated under FIFRA and FHSA, are preempted by these Acts.

## II. DISCUSSION

### A. *Standard of Review*

■ A decision to grant or deny a summary judgment motion is reviewed *de novo. Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *State Farm Fire & Cas. Co., Inc. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

Since this is a facial challenge to Proposition 65, CSMA "must establish that no set of circumstances exists under which the Act would be valid. The fact that the [ ] Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid...." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *see also California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 579–80, 107 S.Ct. 1419, 1424–25, 94 L.Ed.2d 577 (1987) (party making a facial challenge to state regulations based on preemption required to demonstrate "that there is no possible set of conditions [the State] could place on its permit that would not conflict with federal law—that any state permit requirement is *per se* preempted.").

■ There is a presumption against finding that state legislation is preempted by an act of Congress. Preemption analysis starts with the presumption that the traditional police powers of states are not displaced by federal law unless displacement was the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). "[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). We have noted two practical reasons for this presumption. First, Congress has the power to make preemption clear in the first instance. Second, if the court erroneously finds preemption, the State can do nothing about it, while if the court errs in the other direction, Congress can correct the problem. *Chevron U.S.A., Inc. v. Hammond,* 726 F.2d 483, 488 (9th Cir. 1984), *cert. denied,* 471 U.S. 1140, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985).

■ In particular, "regulation of health and safety matters is primarily, and historically, a matter of local concern." *Hillsborough County v. Automated Med. Labs, Inc.,* 471 U.S. 707, 719, 105 S.Ct. 2371, 2378, 85 L.Ed.2d 714 (1985). Consequently, courts should be especially unlikely to find preemption of state laws in these areas. *See id.* Preemption analysis is governed by a three-part test. First, Congress or a federal agency may expressly preclude all state legislation in a particular field. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, an intent to displace state law may be inferred from the structure and purpose of the federal statute. *Id.* Finally, state law may be preempted if it conflicts with federal law or stands as an obstacle to the achievement of federal objectives. *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

To find that Proposition 65 is preempted under FIFRA or FHSA, this court must determine that all possible consumer product warnings that would satisfy Proposition 65 conflict with provisions of the federal statutes. This case turns on this standard. The focus of the decision below was whether point-of-sale warnings constituted "labeling" under FIFRA or "directions for use" under FHSA. The court answered both questions in the negative and granted summary judgment for the state. Since we agree with the district court that point-of-sale warnings are neither labels nor directions for use, we reject CSMA's preemption arguments. No other Proposition 65 warning devices need be considered since point-of-sale signs are not preempted under either FIFRA or FHSA.

**944**

## B. *The Statutory Background*

### 1. *Proposition 65*

Proposition 65 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." Cal.Health & Safety Code § 25249.6 (West 1991). To satisfy this obligation, the statute explains that:

"Warning" within the meaning of Section 25249.6 need not be provided separately to each exposed individual and may be provided by general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like, provided that the warning accomplished is clear and reasonable.

*Id.* at § 25249.11(f). Proposition 65 therefore provides several methods of compliance: (1) labeling on consumer products; (2) posting notices; (3) placing notices in the news media; (4) any other method providing clear and reasonable warning of the hazard. These methods are further expanded in the safe harbor regulations promulgated by the California Health and Welfare Agency. The safe harbor regulations designate the following language as sufficient to satisfy Proposition 65: "Warning: This product contains a chemical known to the State of California to cause cancer." Cal.Code Regs. tit. 22, § 12601(b)(4)(A) (1991). A retail outlet can comply with Proposition 65 by posting a sign in a visible place specifying the products that are known to the state to cause cancer or that are reproductively toxic. Cal.Code Regs. tit. 22, § 12601(b)(3) (1991).

### 2. *FIFRA*

FIFRA requires the Environmental Protection Agency ("EPA") to register a pesticide before the pesticide can be sold or used. 7 U.S.C. § 136a(a) (1988). The statute and supporting regulations contain detailed requirements for registration. Basically, the requirements are that a pesticide may not be sold (with certain exceptions) unless the EPA first determines that the product's labeling contains warnings and directions for use that are "adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." 40 C.F.R. §§ 156.10(i)(1)(i), 156.10(h) (1991); *see also* 40 C.F.R. §§ 156.10(a)(1)(vii), 156.10(a)(1)(viii) (1991); 7 U.S.C. § 136a(c)(5)(B). Once the EPA has registered a pesticide and approved its label, the manufacturer may not change the label without the EPA's prior approval.

FIFRA's preemption clause provides as follows:

§ 136v Authority of States

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v (1988). So long as additional labeling is not required, FIFRA expressly authorizes state pesticide regulation. Other than regulating labels, states are left free to impose whatever restrictions they may wish. Consequently, a state could prohibit the sale of a pesticide within its borders even though it could not require the manufacturer of the pesticide to change the label.

Both parties to this appeal agree that Congress included the preemption provision in FIFRA to promote uniformity and ease distribution practices for chemical product manufacturers. CSMA asserts that the uniformity objective is founded on the belief that consumers traveling between states would be confused by different labels on the same products. In support of this argument, CSMA quotes the following comment from Congressman Sisk at the congressional hearings on the 1972 FIFRA amendments:

As I understand, Mr. Ackerly [CSMA counsel], you desire what in essence, would be Federal preemption as to labeling or as to standards on household items in connection with labeling and of the word "Poison" in certain instances. I am inclined to agree with you because I do not see how else we can really inform people who do not intend to stay in the same place, and will be reading labels in other States.

Hearings Before Comm. on Agriculture, House of Representatives, 92d Cong., 1st Sess. 287 (Mar. 8, 1971). According to CSMA, the importance of a uniform labeling system under FIFRA is rooted in a concern for clarity so that consumers can easily recognize warning labels no matter which state they enter. CSMA then suggests that the point-of-sale signs required under Proposition 65 defeat this congressional purpose by requiring additional labeling that creates consumer confusion.

CSMA's argument, however, is circular. The issue before us is whether Proposition 65 requires additional product "labeling." Certainly, if we conclude that point-of-sale signs are additional labels, then those signs are preempted by FIFRA. Citing legislative history that explains why additional labeling is preempted, however, does not address the issue of what constitutes additional labeling. The labels attached to the chemical containers remain unchanged by Proposition 65.

### 3. *FHSA*

FHSA requires labeling of certain consumer products intended for use in the household or by children. The central requirement of the Act is that manufacturers of hazardous products provide cautionary labels clearly indicating the hazards and providing consumers with directions for use. The amendments to the Act contain a limited preemption provision which provides as follows:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§ 1261(p) or 1262(b) ] designed to protect against a risk of illness or injury associated with the substance, no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under 2(p) or 3(b).

15 U.S.C. § 1261 note (b)(1)(A) (1988) (Effect Upon Federal and State Law, § (b)(1)(A), Pub.L. 94–284 § 17(a)). The preemption issues arising under FHSA are identical to those arising under FIFRA. We must similarly determine whether the point-of-sale signs that satisfy Proposition 65 fall within the preemption clause of FHSA.

### C. *Whether Proposition 65 Warnings Constitute a State Requirement for Labeling that Is Preempted under FIFRA.*

#### 1. *Express Preemption under FIFRA.*

CSMA points out that FIFRA expressly prohibits states from imposing labeling requirements that differ from those registered with the EPA. CSMA then argues that the warnings required under Proposition 65 fall squarely with FIFRA's definition of "labeling." Consequently, CSMA asserts that Proposition 65 is expressly preempted by FIFRA. We agree that additional labeling requirements would be unconstitutional under FIFRA. However, we disagree that the warning requirements of Proposition 65 constitute additional labeling.

FIFRA defines the term labeling as follows:

§ 136(p) Label and labeling

(1) Label

The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

(2) Labeling

The term "labeling" means all labels and all other written, printed, or graphic matter—

   (A) accompanying the pesticide or device at any time; or

(B) to which reference is made on the label or in literature accompanying the pesticide or device....

7 U.S.C. § 136(p)(2) (1988). Under this definition, Proposition 65 warnings clearly are not "labels" within the meaning of paragraph (1), since point-of-sale warnings are neither written on the pesticide nor attached to it. The question remains, however, whether these warnings constitute "labeling" under paragraph (2) above.

CSMA argues that the point-of-sale signs constitute labeling because they are written materials that accompany the pesticide at the point of sale. It claims that since FIFRA defines labeling as "all other written, printed, or graphic matter ... accompanying the pesticide ... at any time," Proposition 65's warning methods all fall within this broad definition. This interpretation, however, cannot be correct.

FIFRA's definition of labeling cannot encompass every type of written material accompanying the pesticide at any time. If this were true, then price stickers affixed to shelves, sheets indicating that a product is on sale, and even the logo on the exterminator's hat would all constitute impermissible labeling.

The leading case that interprets the term "labeling" as defined by FIFRA is *New York State Pesticide Coalition, Inc. v. Jorling*, 874 F.2d 115 (2nd Cir.1989). In *Jorling*, the Second Circuit addressed the question of whether a New York law, designed to assure public awareness of the presence of poisonous chemicals dispensed on properties, was preempted by FIFRA. Although CSMA attempts to distinguish *Jorling*, that case is nearly identical to the one now before us.

New York passed legislation that set forth notification requirements "intended to alert the public to the impending use of poisonous chemicals and to disseminate information to those who may be exposed." *Jorling*, 874 F.2d at 116. The New York law at issue required all commercial pesticide applicators to give the purchaser of the service a cover sheet providing warnings and safety information, and to post signs on the perimeter of the affected property warning people not to enter the premises for a specified number of hours. *Id.*

The *Jorling* Court interpreted the same language from FIFRA as we must now interpret, and it concluded that the posted signs did not constitute labeling. Consequently, the New York notification law was not preempted. The Court stated:

Because the notification materials are present in some spatial and temporal proximity to the applied pesticide, it is asserted they "accompany" it. But this definition is rather strained. *"Labeling" is better understood by its relationship, rather than its proximity, to the product.*

... FIFRA "labeling" is designed to be read and followed by the end user. *Generally, it is conceived as being attached to the immediate container of the product in such a way that it can be expected to remain affixed during the period of use.*

*Jorling*, 874 F.2d at 119 (emphasis added).

CSMA cites *Jorling* for the proposition that FIFRA preempts state laws that require manufacturers to provide supplemental product warning information to the end user. Yet, *Jorling* cannot possibly stand for this proposition. The issue in *Jorling* was whether the posting of signs constituted labeling, and the court held that it did not. *Id.* The court examined the common usage of the term "labeling" and concluded that it did not apply to the posted notices required under the New York State law at issue in that case. Similarly, we conclude that the term "labeling" does not apply to the point-of-sale signs required under Proposition 65. Point-of-sale signs are not attached to the immediate container of a product and will not accompany the product during the period of use.

CSMA also cites *Kordel v. United States*, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948), in support of its claim that point-of-sale signs are labels. In *Kordel*, the Court held that supplemental literature provided by a drug manufacturer constituted labeling under the Federal Food, Drug and Cosmetic Act because it advised end users on how to administer a drug. *Kor-*

*del,* however, is distinguishable from the case at hand. First, the written materials in *Kordel* were aimed at the ultimate user of the drug, not the purchaser that is targeted by Proposition 65. 335 U.S. at 348, 69 S.Ct. at 108. Second, the materials at issue in *Kordel* contained directions for use, which the EPA had clearly stated must be on the label. *Id.* Finally, the context of the manufacturer's mailings in that case suggested that the manufacturer was attempting to circumvent the Act rather than supplement it. *Id.* at 350, 69 S.Ct. at 109. We find no such factors present in the instant case. Consequently, *Kordel* does not apply. FIFRA does not expressly preempt Proposition 65 since point-of-sale signs do not constitute labeling under the Act.

### 2. *Implied Preemption under FIFRA.*

■ CSMA argues that Proposition 65 is impliedly preempted by FIFRA for two reasons. First, CSMA asserts that manufacturers must seek EPA approval of new labels, when Proposition 65 requires additional warnings for the pesticide, to avoid the risk of misbranding products. The argument essentially is that by supplementing the EPA-approved label to provide an additional warning, the manufacturer implicitly acknowledges that the EPA-approved label is incomplete, thereby subjecting the manufacturer to an EPA sanction for misbranding its products. Second, CSMA argues that when Proposition 65 requires additional warnings, the manufacturers must change their labels to avoid product liability suits. Although the first of these arguments is weak, the second is not.

FIFRA provides that a pesticide is misbranded if the warning on the label is insufficient to protect the public health. 7 U.S.C. § 136(q)(1)(G) (1988). As manufacturers uncover additional information about the health risks of their products, they must bring this information to the attention of the EPA and add this information to their product labels. CSMA argues that manufacturers who are required by Proposition 65 to post point-of-sale notices become liable under FIFRA for mis-branding their products. CSMA has cited no cases in support of this argument. It seems implausible that the EPA would prosecute a company for, in essence, complying with Proposition 65.

Manufacturers only become liable for misbranding when their labels are insufficient, not for posting additional warning signs as dictated by state law. If manufacturer awareness of new product risks is triggered by the State of California's list of chemicals known to cause cancer or reproductive toxicity, then the list of chemicals merely uncovers hazards that should have been uncovered by the manufacturers. The more likely scenario is that the hazards of a chemical are already known to both the manufacturer and the EPA, but that neither believes that cancer or reproductive toxicity is a likely danger. In this scenario, it seems contradictory to assert that the EPA will prosecute a company for satisfying the standards developed by the EPA but deemed insufficient by the State of California.

CSMA's second argument in support of implied preemption is that manufacturers would be obligated to change their labels when California requires additional point-of-sale warnings. Otherwise, the manufacturers would be at risk of product liability suits for inadequate warning. This argument has merit. The issue is whether manufacturers can incur tort liability for inadequate warnings on products regulated under FIFRA. If they can, then perhaps plaintiffs could argue that the Proposition 65 warnings reveal the inadequacies of the EPA approved labels. Proposition 65 does have an express provision, however, that the warnings shall not be construed to establish exposure levels for any other regulatory purpose. Cal.Code Regs. tit. 22, §§ 12701(d), 12801(e) (1991).

Proposition 65 neither expressly nor impliedly requires additional product labeling. Consequently, manufacturers need not feel pressure to apply for EPA approval of label changes so that they can comply with Proposition 65. Point-of-sale signs are sufficient to satisfy the California requirements. Whether these signs create legit-

imate fears of product liability suits in other states for failing to warn of the dangers listed on the point-of-sale warnings in California, however, merits discussion. CSMA makes a good point when it claims that no manufacturer wants to face a jury in a defective labeling case arguing that a cancer, reproductive or developmental hazard warning not given in the forum state was given in California only to comply with Proposition 65. The argument, however, fails for two reasons. First, it is not clear whether plaintiffs can sue for defective labeling of products regulated by FIFRA. Second, even if they could, a point-of-sale warning required by Proposition 65 is not an admission of liability.

The case law is split on whether plaintiffs can sue manufacturers for defective labeling of products regulated by FIFRA. The argument against product liability suits for inadequate labeling is strong. State tort liability holds manufacturers liable for failing to include an adequate warning on the product's *label*. Since FIFRA expressly preempts additional state *labeling* requirements, the tort suits could circumvent the preemption clause by effectively requiring additional labeling to avoid tort liability even though the states do not expressly require the additional labeling.

In *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404 (E.D.Mich.1987), the court did not allow a product liability suit for inadequate labeling of a product regulated by FIFRA. The court stated:

> Where the federal government has preempted any state regulation, there can be no recovery in tort. Allowing recovery under state tort law where Congress has preempted state law would effectively authorize the state to do through the back door exactly what it cannot through the front. FIFRA expressly provides that no state may impose "*any* requirement for labeling or packaging *in addition to or different from* those required under this Act." 7 U.S.C. § 136v(b).

681 F.Supp. at 407. Other district courts finding that FIFRA preempts state tort claims for inadequate labeling include *Ken-*

*nan v. Dow Chem. Co.*, 717 F.Supp. 799 (M.D.Fla.1989), and *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283 (W.D.Mo. 1989).

An equal weight of authority, however, suggests that product liability claims for inadequate warnings are not preempted by FIFRA. Cases finding no preemption include *Arkansas Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 748 F.Supp. 1474 (D.Colo.1990); *Stewart v. Ortho Consumer Products*, 1990 WL 36129 (E.D.La.1990); *Cox v. Velsicol Chem. Corp.*, 704 F.Supp. 85 (E.D.Pa.1989); *Roberts v. Dow Chem. Co.*, 702 F.Supp. 195 (N.D.Ill.1988).

Only two federal appellate courts have addressed the issue and these two cases are split as well. In *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), the D.C. Circuit held that state common law tort suits were not preempted by FIFRA. However, in *Papas v. The Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991), *petition for cert. filed sub nom.*, 60 U.S.L.W. 3016, 3053 (U.S. May 29, 1991) (No. 90–1837), the Eleventh Circuit held that state tort suits were preempted. The great split in authority is important to illustrate that even when the consequences of state action clearly pressure companies to change their FIFRA labels, there is no consensus on whether the state action is preempted. In the instant case, however, there would be no need for companies to change their labels to comply with Proposition 65, unlike the need to change labels in order to avoid state tort liability. Whether or not product liability suits for defective labeling should be permitted, we do not believe Proposition 65 in any way pressures manufacturers to affix additional labels to the containers of their products. Consequently, the argument for implied preemption is not persuasive.

3. *Frustration of Congressional Purpose.*

For purposes of preemption analysis, CSMA must show a physical impossibility of complying with both Proposition 65 and

FIFRA before succeeding on a claim that Proposition 65 is preempted on this theory. The Supreme Court has stated that the proper approach is to "reconcile the operation of both statutory schemes with one another rather than holding [that one has been] completely ousted." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 183, 98 S.Ct. 988, 1007, 55 L.Ed.2d 179 (1978) (quotation marks omitted). *See also Florida Lime*, 373 U.S. at 152, 83 S.Ct. at 1222; *California Coastal Comm'n*, 480 U.S. at 581, 107 S.Ct. at 1425. Since CSMA has acknowledged the possibility of complying with both Proposition 65 and FIFRA, we need not consider whether Proposition 65 frustrates congressional purpose.

D. *Whether Proposition 65 Warnings Constitute a State Requirement for Labeling that is Preempted under FHSA.*

█ CSMA argues that FHSA § 17(b) expressly preempts all state mandated precautionary labeling that is not identical to that required by the Act. This is correct. FHSA § 17(b)(1)(A) provides as follows:

> [N]o State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical....

15 U.S.C. § 1261 note (1988) (Effect Upon Federal and State Law, § (b)(1)(A), Pub.L. 94–284 § 17(a)). Under the FHSA, however, "all accompanying literature where there are directions for use, written or otherwise" is defined as cautionary labeling, 15 U.S.C. § 1261(n)(2) (1988). Accompanying literature is defined as follows:

> [A]ny placard, pamphlet, booklet, book, sign, or other written, printed, or graphic matter or visual device that provides directions for use, written or otherwise, and that is used in connection with the display, sale, demonstration, or merchandising of a hazardous substance intended for ... use in the household or by children.

16 C.F.R. § 1500.3(c)(9) (1991). CSMA's contention that Proposition 65 point-of-sale warnings fall within this definition is implausible for two reasons. First, Proposition 65 warnings are not "directions for use," and second, the warnings are not necessarily nonidentical.

CSMA creates several strained analogies to make the argument that Proposition 65 warnings are directions for use, and therefore constitute labeling under FHSA. For example, CSMA claims that Proposition 65 warnings contain both a signal word and a statement of principle hazard: Warning, this product contains a chemical known to the State of California to cause cancer. The argument is founded upon the misconception that since this warning impliedly directs the consumer to handle the product so as to avoid or minimize direct exposure, the warning is a direction for use. Basically, CSMA argues that since Proposition 65 warnings of cancer or reproductive toxicity convey information about the product's dangers and the need to use the product cautiously, they are directions for use. We do not believe Congress intended such a broad reading of that term.

During the trial below, Judge Smith illustrated the nonsensical reading CSMA gives to the term "directions for use" when she noted during oral argument that a sign stating "this product may cause birth defects:"

> [D]oesn't tell you whether it's going to cause defects if you pour it on your feet, or if you drink it, or if you poke it in your ear, it just says that it may cause birth defects. How is that a direction for use?

Such a warning cannot, by definition, be a direction for use. *See Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1086 (D.C.1976); *Jorling*, 874 F.2d at 119.

As the State points out, Congress more likely had a common sense definition of the term "directions for use," such as how much of a detergent to use, or how long a paint solvent should be mixed. CSMA's argument that Proposition 65 warnings constitute directions for use was rejected below as counter to the plain meaning of the term. The argument simply does not comport with common sense.

Furthermore, Proposition 65 warnings are not necessarily nonidentical to the warnings required under FHSA. FHSA does not require any specific language in its warnings. The Act merely requires (1) that labels contain the signal word "WARNING" or "CAUTION" and (2) words which describe the potential hazard. Consequently, a message such as the following could comply with both Proposition 65 and FHSA: "Warning, this product contains materials known to the State of California to cause cancer."

Finally, we see no congressional purpose frustrated by Proposition 65. Congress apparently sought to balance its concern for a national safety standard with its desire for the states to promulgate their own sales and warning requirements. The legislative history makes this clear:

> This preemption scheme is designed to meet the competing interests of those who view Federal requirements as merely minimum standards and those who would opt for uniform national requirements.

S.Rep. No. 94–251, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 993, 1004. *See also CSMA v. Lowery,* 452 F.2d 431, 438 (2d Cir.1971). On the one hand, a national safety standard would ease the burden of compliance for chemical product manufacturers by relieving them from the burden of complying with fifty-one separate regulatory schemes promulgated by each state and the federal government. On the other hand, such a standard would take police powers away from the states who best know how to serve the interests of their citizenry. The preemption clause in FHSA balances these competing concerns by leaving cautionary labeling requirements to the federal government while allowing states to regulate the sale and use of hazardous chemicals. Proposition 65 warnings do not constitute cautionary labeling preempted by FHSA.

AFFIRMED.