Carolyn YOWELL, et al.,
Plaintiffs–Appellants,

v.

CHEVRON CHEMICAL COMPANY,
Defendant–Respondent.

No. 17605.

Missouri Court of Appeals,
Southern District,
Division Two.

July 13, 1992.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Aug. 3, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Ronald D. White, J. William Turley, Joseph W. Rigler, Williams, Robinson, Turley, Crump & White, Rolla, for plaintiffs-appellants.

Fairfax Jones, Brian H. May, Casserly, Jones & Brittingham, St. Louis, for defendant-respondent.

FLANIGAN, Chief Judge.

This is an action for the wrongful death of William Yowell, Jr., who died on September 5, 1985, allegedly as a result of his use of the pesticides Malathion and Orthene, manufactured by defendant Chevron Chemical Company. Plaintiffs are the surviving spouse, child and parents of decedent. The two-count petition was based on alternative theories of strict liability and negligence. Each count alleged that Chevron "did not give an adequate warning of the dangers" of the pesticides.

Chevron filed a motion for summary judgment on the ground that the two pesticides "are within the purview of the Federal Insecticide, Fungicide, Rodenticide Act, 7 U.S.C. Section 136 *et seq.* (FIFRA), and were properly registered with the Environmental Protection Agency.... Plaintiffs'

cause of action is pre-empted by Federal law." The trial court sustained the motion and entered judgment against plaintiffs and in favor of Chevron. Plaintiffs appeal.

Plaintiffs' brief states: "The chemical pesticides involved, Malathion and Orthene, are pesticides manufactured by respondent. Both substances are within the regulatory purview of FIFRA. Both chemicals are registered and labeled in accordance with the provisions of FIFRA and with the approval of the EPA."

Plaintiffs' sole point is that the trial court erred in entering the summary judgment because "there is a genuine issue of material fact to be determined by the jury concerning the adequacy of the warning provided by Chevron since a state product liability action is not barred by federal pre-emption under 7 U.S.C. § 136 et seq."

7 U.S.C. § 136v reads, in pertinent part:
(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

Although plaintiffs' point speaks generally of the "adequacy of the warning," it is clear, by their pleadings in the trial court and their brief and argument here, that plaintiffs are attempting to challenge the adequacy of the warnings contained on the labels of the two pesticides. Plaintiffs admit that the labels were approved by the Environmental Protection Agency. The issue is whether a Missouri jury, under instructions in this tort action, could be permitted to find that the warnings contained in the respective labels are insufficient.

Plaintiffs' brief says:
Even if one were to assume that FIFRA pre-empts a state from requiring additional labeling requirements, this does not preclude the state imposing tort liability upon a manufacturer if an EPA-approved warning is found by the jury to be inadequate to warn a user of the product. The fact that Chevron may be required to pay damages to injured parties who are successful under a products liability theory based upon a failure to provide an adequate warning does not place Chevron in a position where it is impossible for them to comply with both state and federal law. Chevron clearly can continue to comply with the requirements of federal law and, at the same time, be required to compensate persons injured by their product.

For the reasons which follow, this court holds that plaintiffs' cause of action based, as briefed and argued here, solely on alleged defective labeling, is barred by federal pre-emption under 7 U.S.C. § 136v(b), and that the trial court properly sustained Chevron's motion for summary judgment.

The holding of this court is based on certain language, arguably dicta, in *Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), and the holding in *Arkansas–Platte & Gulf v. Van Waters & Rogers, Inc.,* 959 F.2d 158 (10th Cir.1992), which was decided after *Mortier.* It is also supported by *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir.1991), a pre-*Mortier* case. Another pre-*Mortier* case, which reached the opposite result, is *Ferebee v. Chevron Chemical Company,* 736 F.2d 1529 (D.C.Cir.1984). See generally 101 A.L.R. Fed. 887 (Federal pre-emption of state common law products liability claims pertaining to pesticides).

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in *McCulloch v. Maryland,* 4 Wheat, 316, 427 [4 L.Ed. 579] (1819), it has been settled that state law that conflicts with federal law is "without effect."

*Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis.

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Id.* (Authorities omitted.)

■ Where pre-emption exists, it applies to state-court damages actions. *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987); *Chicago N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 325–326, 101 S.Ct. 1124, 1134, 67 L.Ed.2d 258, 270 (1981); *Arkansas–Platte, supra*, at 161–162; *Papas, supra*, at 1022, 1024; *Taylor v. General Motors Corp.*, 875 F.2d 816, 822 (11th Cir.1989). See *Cipollone v. Liggett Group, Inc., supra*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (Part V).

In *Taylor* the court said, at 824, n. 16:

The imposition of damages under state tort law has long been held to be a form of state regulation subject to the supremacy clause. As the Supreme Court explained in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), "regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 247, 79 S.Ct. at 780.

■ Prior to *Mortier*, federal district courts split on the issue of whether 7 U.S.C. § 136v(b) precluded a challenge to the adequacy of a warning contained on an EPA-approved pesticide label in a products liability action based on common law. The division of authority existed in federal district courts in Missouri. See *Fisher v. Chevron Chem. Co.*, 716 F.Supp. 1283 (W.D.Mo.1989) (pre-emption); *Hurt v. Dow Chemical Co.*, 759 F.Supp. 556 (E.D.Mo. 1990) (pre-emption); and *Riden v. ICI Americas, Inc.*, 763 F.Supp. 1500 (W.D.Mo. 1991) (no pre-emption). Additional citations to federal district court decisions, all predating *Mortier*, are set forth in *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 948 (9th Cir.1992), and *Papas, supra*, at 1021, n. 1.

In *Mortier*, the Court held that FIFRA, 7 U.S.C. § 136 *et seq.*, did not pre-empt the regulation of pesticides by local government. Although the facts in *Mortier* did not involve the adequacy of an EPA-approved label, the Court dealt with 7 U.S.C. § 136v(a) and (b), set forth earlier in this opinion.

As significant here, the court said, at 2486:

More importantly, field pre-emption cannot be inferred. In the first place, § 136v itself undercuts such an inference. The provision immediately following the statute's grant of regulatory authority to the States declares that "[s]uch State shall not impose or continue in effect any requirements for labeling and packaging in addition to or different from those required under" FIFRA, 7 U.S.C. § 136v(b). *This language would be pure surplusage if Congress had intended to occupy the entire field of pesticide regulation.* Taking such pre-emption as the premise, § 136v(a) would thus grant States the authority to regulate the "sale or use" of pesticides, while § 136v(b) would superfluously add that States did not have the authority to regulate "labeling or packaging," an addition that would have been doubly superfluous given FIFRA's historic focus on labeling to begin with. (Emphasis added.)

The court said, —— U.S. at ——, 111 S.Ct. at 2487:

*As we have made plain,* the statute does not expressly or impliedly preclude regulatory action by political subdivisions with regard to local use.... *As we have also made plain,* local use permit regulations—*unlike labeling* or certification—do not fall within an area that FIFRA's "program" *pre-empts* or even plainly addresses. (Emphasis added.)

In *Arkansas–Platte, supra,* the court agreed with *Papas, supra,* and held that state common law labeling claims are impliedly pre-empted by FIFRA, 7 U.S.C. § 136v(b). The court discussed *Mortier,* and quoted most of the language from *Mortier* set forth above. At 163 the court said:

Thus, the Supreme Court reasoned Congress had not occupied the entire field of pesticide regulation, instead leaving intact the state's historic police powers to consider regional and local factors in regulating *use.* The Court indicated, however, Congress had impliedly preempted state regulation in the more narrow area of *labeling.* While the holding of *Mortier* is confined to the regulation of pesticides by local governments, *id.* [— U.S. at ——] 111 S.Ct. at 2479, we are nevertheless inclined to adopt its construction of FIFRA. (Emphasis in original.)

At 160 the court said: "A plain reading of the statute indicates an intent to maintain the traditional police powers of the states in the general grant of authority to 'regulate the sale or use' of pesticides, § 136v(a), and a more specific intent to occupy the field in labeling and packaging, § 136v(b)."

That construction of § 136v(b) is supported by the fact that Congress, in 1988, amended that provision to insert the caption "Uniformity."

Other post-*Mortier* cases consistent with the holding in *Arkansas–Platte* are *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby, supra,* 958 F.2d at 942, 944; *Young v. American Cyanamid Co.,* 786 F.Supp. 781 (E.D.Ark.1991), and *Worm v. American Cyanamid Company* (1991 WL 144328 (D.Md.). *Contra, Montana Pole & Treating Plant v. I.F. Laucks,* 775 F.Supp. 1339

(D.Mont.1991), criticized in *Arkansas–Platte* at 163, n. 6.

In *Allenby* the court said, at 944:

So long as additional labeling is not required, FIFRA expressly authorizes state pesticide regulation. Other than regulating labels, states are left free to impose whatever restrictions they may wish. Consequently, a state could prohibit the sale of a pesticide within its borders even though it could not require the manufacturer of the pesticide to change the label.

*Ferebee* is the principal pre-*Mortier* case relied on by plaintiffs. This court agrees with the following comments contained in *Arkansas–Platte* at 161–162:

*Ferebee* distinguished between the "direct" injunction against the states' imposing labeling requirements and requirements which might be imposed through state common law. *Id.* The court reasoned the EPA's determination that Chevron's label was adequate *"for FIFRA purposes* does not compel a jury to find that the label is also adequate *for purposes of state tort law...." Ferebee,* 736 F.2d at 1540 (emphasis in *Ferebee* ). *Ferebee* further stated:

The verdict itself does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not equivalent to a direct regulatory command that Chevron change its label....

*Ferebee,* 736 F.2d at 1541.

We do not accept this "choice of reaction" analysis. A business choice between paying damages and changing the label is only notional. As the First Circuit stated in *Palmer v. Liggett Group, Inc.,* 825 F.2d 620 (1st Cir.1987):

Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not im-

mediately take steps to minimize its exposure to continued liability. The most obvious change it can take ... is to change its label.

*Id.* at 627–28. This choice cannot be consistent with FIFRA's preclusion of "any requirements for labeling or packaging in addition to or different from" the statutory mandate. 7 U.S.C. § 136v(b).

This court also agrees with the following language in *Arkansas–Platte* at 164:

We therefore hold state tort actions based on labeling and alleged failure to warn are impliedly preempted by FIFRA as a matter of law. This is by virtue of the direct conflict posed with federal uniform regulation of pesticides, and because we believe Congress intended to occupy the field of pesticide labeling regulation. We base our holding on the language of § 136v, our rejection of the *Ferebee* court's "choice of reaction" analysis, and our understanding of the Supreme Court's construction of FIFRA in *Mortier*.

This court also agrees with the following language in *Papas* at 1026:

A jury's imposition of damages in a state tort suit premised on labeling claims would disrupt the methods by which FIFRA protects man and the environment because it would inject irrelevant considerations into the EPA's evaluation of a pesticide and its labeling and would second guess the EPA's conclusions.

Allowing state common law tort actions based on labeling claims would permit state court juries to do what state legislatures and state administrative agencies are forbidden to do: impose requirements for labeling pesticides.

.    .    .    .    .

We hold that FIFRA impliedly preempts state common law tort suits against manufacturers of EPA-registered pesticides *to the extent that* such actions are based on claims of inadequate labeling. (Emphasis in original.)

In *Arkansas–Platte,* the plaintiff had state tort claims against the defendant in addition to the claim based on labeling and failure to warn. The court of appeals held that defendants were entitled to summary judgment on the claims based on labeling and failure to warn but remanded for further proceedings with respect to the other state tort claims.

In this court, plaintiffs do not assert that they have any claims for tort liability of Chevron other than the pre-empted claim of inadequate labeling. Plaintiff's reply brief in this court states:

Plaintiffs' action was based upon Chevron's failure to provide an adequate warning of the dangers of its chemical products, Malathion and Orthene. Both products bore EPA approved labels in accordance with FIFRA. Plaintiffs assert that those EPA approved labels do not provide an adequate warning of the chemicals' dangers under Missouri products liability doctrines.

It follows that the judgment should be affirmed rather than affirmed with remand.

The judgment is affirmed.

MONTGOMERY, J., concurs.

SHRUM, P.J., dissents and files dissenting opinion.

SHRUM, Presiding Judge, dissenting.

I respectfully dissent.

When the United States Supreme Court considers pre-emption, it starts "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wisconsin v. Public Intervenor v. Mortier,* —— U.S. ——, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991). Most recently in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) the Supreme Court said:

(W)e must construe these provisions [pre-emptive provision in cigarette advertising legislation] in light of the presumption against the pre-emption of state police power regulations. This presumption reinforces the appropriateness of a narrow

reading of [the pre-emptive provision].... (T)here is no general, inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions.

In a concurring portion of his separate opinion in *Cipollone*, Justice Blackmun further explained the presumption against preemption as follows:

The principles of federalism and respect for state sovereignty that underlie the Court's reluctance to find preemption where Congress has not spoken directly to the issue apply with equal force where Congress has spoken, though ambiguously. In such cases, the question is not *whether* Congress intended to pre-empt state regulation, but to what *extent*. We do not, absent unambiguous evidence, infer a scope of pre-emption beyond that which is clearly mandated by Congress language.

—— U.S. at ——, 112 S.Ct. at 2625. And in *Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 780, 67 S.Ct. 1026, 1033, 91 L.Ed. 1234 (1947), Justice Jackson observed:

Since Congress can, if it chooses, entirely displace the States to the full extent of the far-reaching Commerce Clause, Congress needs no help from generous judicial implications to achieve the supersession of State authority.... Any indulgence in construction should be in favor of the States, because Congress can speak with drastic clarity whenever it chooses to assure full federal authority, completely displacing the States.

Here the FIFRA pre-emption clause, 7 U.S.C. § 136v(b), only provides that the states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from" those requirements imposed by FIFRA. No reference is made in § 136v(b) to the preemption of state common law remedies.

The simplest and most obvious explanation for such statutory silence is that Congress never intended to displace state common law claims. If it had intended to do so, it could have said so simply and in unambiguous language. By finding federal pre-emption in this case the majority eliminates a critical component of Missouri's traditional ability to protect the health and safety of its citizens. Lest we forget, the fundamental premise of Missouri products liability law, as announced in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362, 365 (Mo. banc 1969) is that "the costs of injuries resulting from defective products are [to be] borne by the manufacturers ... that put such products on the market rather than by the injured persons who are powerless to protect themselves." I believe that the radical readjustment of federal-state relations in this area is warranted only if there is clear evidence that Congress intended that result. Because I believe that 7 U.S.C. § 136 *et seq.* (1982) (FIFRA) does not evidence such a clear congressional intent, I respectfully dissent.

The majority relies primarily on *Arkansas–Platte & Gulf v. Van Waters & Rogers*, 959 F.2d 158 (10th Cir.1992), which held that "state tort actions based on labeling and alleged failure to warn are impliedly preempted by FIFRA as a matter of law." *Id.* at 164. The *Arkansas–Platte* court based its finding upon its "plain reading of the statute" which revealed a "specific intent to occupy the field in labeling and packaging, § 136v(b)," *Id.* at 160, and upon obiter dicta in *Mortier* that "Congress had impliedly preempted state regulation in the more narrow area of *labeling.*" 959 F.2d at 163.

My plain reading of the statute, my examination of *Mortier*[1] in which the Court reaffirmed the long-standing presumption against pre-emption, and my reading of *Cipollone* in which the Court extended the

---

1. Mortier dealt with a local regulation of pesticide licensing and application by a small community in Wisconsin. Justice White, writing for

the Court, said: "This case requires us to consider whether [FIFRA] ... pre-empts the regula-

presumption against pre-emption [2] leads me to conclude that *Arkansas–Platte* was wrongly decided. I believe there is ambiguity concerning the scope of 7 U.S.C. § 136v(b); accordingly I feel *Cipollone* compels a holding that the ambiguity must be resolved in favor of preserving state power, e.g. by finding that a common law tort action is not pre-empted by the legislation.

I am persuaded by the views expressed in, for example, *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.1984), and *Montana Pole & Treating Plant v. I.F. Laucks & Co.*, 775 F.Supp. 1339 (D.Mont. 1991). As the *Ferebee* court noted,

> "The purposes of FIFRA and those of state tort law may be quite distinct. FIFRA aims at ensuring that, from a cost-benefit point of view, [the product] as labelled does not produce "unreasonable adverse effects on the environment." State tort law, in contrast, may have broader compensatory goals; conceivably, a label may be inadequate under state law if that label, while sufficient under a cost-benefit standard, nonetheless fails to warn against any significant risk. In addition, even if the ultimate purposes of federal and state law in this area are the same, a state (acting through its jurors) may assign distinct weight to the elements which go into determining whether a substance as labelled is of sufficient net benefit as to warrant its use.... [A] state may choose to tip the scales more heavily in favor of the health of its citizens than EPA is permitted to by FIFRA.

736 F.2d at 1540.

> Moreover, tort recovery in a case such as this one may also promote legitimate regulatory aims. By encouraging plaintiffs to bring suit for injuries not previously recognized as traceable to pesticides ... a state tort action of the kind under review may aid in the exposure of new dangers associated with pesticides. Successful actions of this sort may lead manufacturers to petition EPA to allow more detailed labelling of their products; alternatively, EPA itself may decide that revised labels are required in light of the new information that has been brought to its attention through common law suits.

736 F.2d at 1541.

The *Montana Pole* opinion points out that the *Ferebee* court relied on alternative rationales for its decision: "1) Compliance with both federal and state law cannot be said to be impossible because the defendant can petition the EPA to allow the label to be more comprehensive; and 2) state common law damages would not serve as an obstacle to the accomplishment of FIFRA's purpose." 775 F.Supp. at 1344 n. 7. I believe both rationales are sound. As Justice Blackmun said in *Cipollone*, — U.S. at ——, 112 S.Ct. at 2627–28:

> The effect of tort law on a manufacturer's behavior is necessarily indirect. Although an award of damages by its very nature attaches additional consequences to the manufacturer's continued unlawful conduct, no particular course of action (*e.g.*, the adoption of a new warning label) is required. A manufacturer found liable on, for example, a failure-to-warn claim may respond in a number of ways. It may decide to accept damages awards as a cost of doing business and not alter its behavior in any way ... Or by contrast, it may choose to avoid future awards by dispensing warnings through a variety of alternative mechanisms, such as package inserts, public service advertisements or general educational programs. The level of choice that a defendant retains in shaping its own behavior distinguishes the indirect

tion of pesticides by local governments. We hold that it does not."

**2.** In his dissent in *Cipollone* Justice Scalia is critical of the new rule against pre-emption as expressed by the majority in that case. Quoting Justice Scalia: "To my knowledge, we have never expressed such a rule before.... When this second novelty is combined with the first, the result is extraordinary: The statute that says *anything* about pre-emption must say *everything*; and it must do so with great exactitude, as any ambiguity concerning its scope will be read in favor of preserving state power." —— U.S. at ——, 112 S.Ct. at 2634.

regulatory effect of the common law from positive enactments such as statutes and administrative regulations.... Moreover, tort law has an entirely separate function—compensating victims—that sets it apart from direct forms of regulation. See *Ferebee v. Chevron Chemical Co.,* 237 U.S.App.D.C. 164, 175, 736 F.2d 1529, 1540, cert. denied, 469 U.S. 1062 [105 S.Ct. 545, 83 L.Ed.2d 432] (1984).

In several recent cases the Supreme Court has declined to find the regulatory effects of state tort law so substantial and direct as to warrant pre-emption. See, e.g. *English v. General Electric Co.,* 496 U.S. 72, 84, 110 S.Ct. 2270, 2278, 110 L.Ed.2d 65 (1990); *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 185, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 256, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984). In light of the recognized distinctions by the Supreme Court between direct state regulation and the indirect regulatory effects of common-law damages, I cannot agree that damages claims are clearly or unambiguously "requirements" imposed under state law. The plain language of 7 U.S.C. § 136v(a) and (b) does not, in my opinion, bear the broad interpretation the majority would impart to it.

I would further observe that we should not proceed upon the presumption that the EPA is infallible. *Riden v. ICI Americas, Inc.,* 763 F.Supp. 1500, 1508 (W.D.Mo. 1991). "Its method for registering pesticides is only as good as the data submitted by the registrant in its registration statement." *Id.* at 1508–09. The fact that here it is alleged that William Yowell, Jr. died as a result of exposure to the pesticides Malathion and Orthene calls into question the adequacy of the label on each, despite the EPA's approval of the labels and warnings. *Id.* at 1508.

I disagree with the observation in *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir. 1991), cited by the majority, that a jury award would "disrupt the methods by which FIFRA protects man and the environment because it would inject irrelevant considerations into the EPA's evaluation of a pesticide and its labeling ..." *Id.* at 1026. I am skeptical the EPA would even consider jury awards; I doubt the agency would be "disrupted" by them. Certainly, new information about pesticides generated as a result of common law litigation would not be "irrelevant" or disruptive if that information enhanced the EPA's ability or the manufacturer's ability to protect man and the environment. The fear expressed in *Papas* that a jury award would amount to a "second guess" of the EPA's conclusions is not well-founded. On the contrary, I believe that some common-sense "second guessing" by a jury of twelve Missouri citizens would not hinder the EPA in its legitimate mission but would help insure that the compensatory goal of state tort law remains intact.

Finally, I agree with Judge Whipple's concluding remarks in *Riden,* 763 F.Supp. at 1509:

FIFRA's labeling scheme was created to help minimize the risks attendant to pesticide use by seeing to it that all pesticide labels contain certain essential information. The scheme was not created to dissuade manufacturers from revising their labels when new information suggests that further warnings or instructions are needed.

I would hold that Missouri common law claims based on a failure to warn theory are not pre-empted by FIFRA because the federal legislation at issue here does not provide the kind of unambiguous evidence of congressional intent necessary to displace Missouri's common law damage claims. Accordingly, I would reverse and remand for further proceedings.