M & H ENTERPRISES, Gary Hogan, and John Maddox, Plaintiffs–Appellants,

v.

TRI–STATE DELTA CHEMICALS, INC., and Bernardo Chemicals, Ltd., Defendants–Respondents.

No. 22097.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 3, 1998.

Motion for Rehearing or Transfer Denied Dec. 28, 1998.

Application for Transfer Denied Feb. 23, 1999.

Kenneth L. Dement, Jr., Sikeston, for Appellant.

Thomas F. Fisher, Kansas City, Wendell W. Crow, Kennett, Elizabeth R. Jones, Denver, CO, Gary W. Callahan, Greeley, CO, for Respondent Tri–State Delta Chemicals.

Timothy A. Ryan, III, Memphis, TN, J. Michael Mower, Kennett, for Bernardo Chemicals, Ltd.

SHRUM, Presiding Judge.

M & H Enterprises, Gary Hogan, and John Maddox ("Appellants") appeal from the trial court's order granting the Respondents' motions for summary judgment. Appellants sought damages after a herbicide they had used failed to control weevils in a stored pea crop. The trial court entered both summary judgments on the basis that Appellants' claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* We affirm in part; we reverse and remand in part.

## FACTS

In 1992, Appellants, who were brokers and growers of agricultural produce, purchased an insecticide known as Gastoxin Sachets ("Gastoxin") from Respondent Tri–State Delta Chemicals, Inc. ("Tri–State"). Respondent Bernardo Chemicals, Ltd. ("Bernardo"),[1] distributed the Gastoxin to Tri–State. Appellants purchased the Gastoxin intending to use it to protect a large quantity (approximately 900,000 pounds) of purple hull peas from a weevil infestation. At all relevant times, the labeling and manual that accompanied the Gastoxin were registered with and approved by the U.S. Environmental Protection Agency ("EPA") pursuant to FIFRA. The Gastoxin's manual recited that the product was "registered with the [EPA] as an aid in the control of ... weevil[s]" and was "registered with the [EPA] for the fumigation of ... seed and pod vegetables."

Appellants claim that, although they used the Gastoxin in accordance with the product's instructions, the product failed to protect their purple hull peas from weevils, and, as a result, they suffered substantial financial damage ($300,000). Seeking to recover their damages, Appellants filed a three-count amended petition naming Tri–State (in Counts I and II) and Bernardo (in Count III) as defendants. In Count I, Appellants alleged that Tri–State was liable for breach of express warranty and breach of implied warranty of fitness based on the representations contained in Gastoxin's labeling, packaging, and/or manual.[2] In Count II, Appellants alleged that Tri–State was liable for negligent misrepresentation for representations made by Tri–State's employees regarding the Gastoxin's effectiveness in general and as compared to a similar product, Phostoxin. In Count III, Appellants alleged that Bernardo was liable for breach of express warranty and breach of implied warranty of fitness for a particular purpose, again apparently based on the product's labeling, packaging, and/or manual. Both Tri–State and Bernardo moved for summary judgment on the grounds that Appellants' claims were preempted by FIFRA. The trial court granted summary judgment on all three counts. This appeal followed.

## DISCUSSION AND DECISION

### Preemptive Effect of FIFRA in Missouri

Preliminarily, we examine FIFRA and consider its preemptive effect. FIFRA requires pesticide manufacturers, among others, to register pesticides with and submit all proposed labeling for pesticides to the U.S. Environmental Protection Agency ("EPA") for its approval before the manufacturers may distribute the product. FIFRA defines the terms "label" and "labeling" as follows:

"(1) Label

"The term 'label' means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

"(2) Labeling

"The term 'labeling' means all labels and all other written, printed, or graphic matter—

"(A) accompanying the pesticide or device at any time; or

"(B) to which reference is made on the label or in literature accompanying the pesticide or device...."

7 U.S.C. § 136(p). Proposed labeling for a pesticide must include, among other things, pertinent safety information, usage instructions, and information regarding the product's "target" pests and sites of application (e.g., crops, animals, etc.). *See* 7 U.S.C. §§ 136(p), (q), and 136a(c)(1)(C); 40 C.F.R. §§ 152.50 and 156.10(a), (h), and (i). FIFRA's "preemptive" language reads:

"(a) In general

"A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent

1. When referring to Tri–State and Bernardo collectively, we call them "Respondents."

2. In their brief, Appellants advance an argument that their Count I claims of breach of express warranty and breach of implied warranty are also based on oral representations made by Tri–State employees regarding Gastoxin's effectiveness on weevils. We disagree for the reasons explained in the "Discussion and Decision" portion of this opinion.

the regulation does not permit any sale or use prohibited by this subchapter.

"(b) Uniformity

"Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

7 U.S.C. § 136v. Many courts, including this one, have concluded that this language preempts state common law claims predicated on a product's EPA-approved labeling because an award of damages for such claims would effectively impose additional or different labeling or packaging requirements on the manufacturer. *See Yowell v. Chevron Chemical Co.*, 836 S.W.2d 62, 65–66 (Mo.App. 1992).

In *Yowell,* the plaintiffs brought a wrongful death suit against Chevron Chemical Company ("Chevron") alleging that the decedent's use of two pesticides manufactured by Chevron caused his death. *Id.* at 62. The plaintiffs' suit was "based on alternative theories of strict liability and negligence," and, in each count, plaintiffs alleged that "Chevron 'did not give an adequate warning of the dangers.'" *Id.* The trial court, believing the plaintiffs' claims were preempted by FIFRA, granted Chevron's motion for summary judgment. *Id.* at 62–63. This court upheld the trial court's entry of summary judgment for Chevron, reasoning that causes of action predicated "solely on alleged defective labeling" are preempted by FIFRA. *Id.* at 63.

### Point I: Does FIFRA Preempt Appellants' Breach of Warranty Claims?

Appellants' first point relied on contains four arguments, each maintaining that the trial court erred in finding that FIFRA preempted their breach of express and implied warranty claims as pled in Counts I and III. The first three of Appellants arguments under Point I appear to challenge Tri–State's and Bernardo's right to

judgment as a matter of law. We believe this court's decision in *Yowell* controls as to Counts I and III. Accordingly, the trial court did not err in ruling that Respondents were entitled to judgment as a matter of law on those counts.[3] Nonetheless, we address each of Appellants' arguments.

In their first argument, Appellants attempt to escape the preemptive effect of FIFRA by looking to the Act's purpose, which they assert "is to regulate pesticide labeling to insure product safety." Appellants characterize their action as one dealing with product efficacy and not product safety. This distinction is important, Appellants contend, because FIFRA preempts only those defective labeling cases involving product safety. It appears to us that the sole purpose of this argument is to distinguish the issues involved in this case from those disposed of by this court in *Yowell.* Appellants contend that *Yowell* involved only issues of product safety.

To support their argument, Appellants cite authorities generally stating that FIFRA's purpose is to promote safety. *See, e.g., Merrell v. Thomas,* 608 F.Supp. 644 (D.Or.1985), *aff'd* 807 F.2d 776 (9th Cir.1986). However, Appellants fail to cite a single case in which a court has held that FIFRA's preemptive effect is limited to cases involving product safety. "Failure to cite relevant authority where available, or to set forth why such authority is not available, constitutes an abandonment of the point under Rule 84.04(d)." *Williams v. Belgrade State Bank,* 953 S.W.2d 187, 190 (Mo.App.1997). Furthermore, Respondents cite cases from other jurisdictions in which courts have held that FIFRA preempts label-based claims of product ineffectiveness much like the one now before us. *See, e.g., Bruce v. ICI Americas, Inc.,* 933 F.Supp. 781 (S.D.Iowa 1996) (holding that label-based claims for damage to

---

**3.** The author of this opinion dissented in *Yowell* and strongly adheres to the reasoning of and beliefs expressed in that dissent. Even so, *stare decisis* is the cornerstone of our legal system. *See Webster v. Reproductive Health Services,* 492 U.S. 490, 518, 109 S.Ct. 3040, 3056, 106 L.Ed.2d 410 (1989). " 'It is identity of principle not similarity of facts, which furnishes authoritative precedent.' " *Ex parte Dickinson,* 132 S.W.2d

243, 244[1] (Mo.App.1939) (quoting *State v. Lee,* 303 Mo. 246, 259 S.W. 798, 803 (1924)). Where the same or an analogous issue was decided in an earlier case, such case stands as authoritative precedent unless and until it is overruled. *U.S. Life Title Ins. Co. v. Brents,* 676 S.W.2d 839, 841[2] (Mo.App.1984). *Yowell* has not been overruled.

corn crop resulting from pesticide's failure to control corn rootworms were preempted by FIFRA); *Trinity Mountain Seed Co. v. MSD Agvet,* 844 F.Supp. 597 (D.Idaho 1994) (holding that label-based claims for damage to potato crop resulting from failure of fungicide to control fungus and dry rot are preempted by FIFRA). Because Appellants do not support their argument with any relevant authority, because we find no authority that supports their argument, and because courts in other jurisdictions have held that FIFRA preempts "efficacy" claims as well as "safety" claims, we reject Appellants' first argument.

In their second argument, Appellants contend that their claims are not preempted by FIFRA because "Congress did not intend to preempt state law damage claims." Their argument rests primarily on the fact that Congress did not mention state common law claims in 7 U.S.C. § 136v(b). They assert that "[h]ad Congress intended to preempt state common law remedies, it would have done so in simple and unambiguous language." The problem with this contention is that the majority in *Yowell* rejected this same argument when it was proffered by the dissent in that case. *Yowell,* 836 S.W.2d at 67.

Appellants attempt to avoid *Yowell's* adverse holding by citing *Connelly v. Iolab Corp.,* 927 S.W.2d 848 (Mo.1996). There, our supreme court held that a different federal statute, the Medical Devices Amendment of 1976 ("MDA"), 21 U.S.C. § 360c *et seq.,* did not preempt the state common law claims asserted by the plaintiffs. *Id.* at 855[13]. The statutory language on which the defendants in *Connelly* relied as preempting state common law suits is found in 21 U.S.C. § 360k(a).[4] In rejecting the defendant's claim of preemption, the *Connelly* court examined *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in which the U.S. Supreme Court

considered, *inter alia,* whether the Public Health Cigarette Smoking Act of 1969 ("PHCSA"), as amended, 15 U.S.C. §§ 1331–1340, preempted state common law claims against cigarette manufacturers. The PHCSA required cigarette manufacturers to place a specific warning on the label of every package of cigarettes, PHCSA § 4, as amended, 15 U.S.C. § 1333, and contained a preemption provision providing that "[n]o *requirement or prohibition* based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act," PHCSA § 5(b), 15 U.S.C. § 1334(b) (emphasis added). *See Cipollone,* 505 U.S. at 508, 515, 112 S.Ct. at 2613, 2617. The court concluded that a number of the plaintiff's state common law claims were preempted by the PHCSA because the phrase "requirement or prohibition ... imposed under State law" included state common law claims and awards for damages. *Cipollone,* 505 U.S. at 521, 522, 112 S.Ct. at 2619, 2620. In *Connelly,* our supreme court noted that "the term 'requirements' has a narrower meaning in § 360k than in the statute at issue in *Cipollone." Connelly,* 927 S.W.2d at 852 (citing and relying on *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Thus, the Missouri Supreme Court concluded that the MDA did not preempt the state common law claims asserted by the plaintiff. *Connelly,* 927 S.W.2d at 855[13].

Appellants now ask us to adopt the logic and reasoning of *Connelly* with regard to the issue of FIFRA preemption. We decline to do so because we believe the U.S. Supreme Court has sufficiently indicated that FIFRA's preemption provision should be interpreted in a manner consistent with the court's discussion of the preemptive effect of the PHCSA in *Cipollone.* In *Papas v. Upjohn Co.,* 926 F.2d 1019 (11th Cir.1991) (*Pa-*

---

4. In pertinent part, 21 U.S.C. § 360k(a) provides:

"Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

"(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

"(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter."

pas I ), and *Arkansas–Platte & Gulf v. Van Waters & Rogers,* 959 F.2d 158 (10th Cir. 1992) (*Arkansas–Platte I* ), the 10th and 11th Circuits were required to decide whether FIFRA preempted label-based state common law claims. After both circuit courts ruled that FIFRA implicitly preempted such claims, *Papas I,* 926 F.2d at 1026; *Arkansas–Platte I,* 959 F.2d at 164, the U.S. Supreme Court vacated the judgments in both cases and directed each court to reevaluate its decision in light of the U.S. Supreme Court's holding in *Cipollone.*[5]  *Papas v. Zoecon Corp.,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Arkansas–Platte & Gulf Partnership v. Dow Chemical Co.,* 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992). On remand, both circuits held that the preemptive effect of § 136v(b) in FIFRA is as extensive as the preemptive effect of the provision at issue in *Cipollone* and that label-based state common law claims are, therefore, expressly (rather than implicitly) preempted by FIFRA. *Papas v. Upjohn Co.,* 985 F.2d 516, 520 (11th Cir.1993) (*Papas II* ); *Arkansas–Platte v. Van Waters & Rogers,* 981 F.2d 1177, 1179 (10th Cir.1993) (*Arkansas–Platte II* ).

Significantly, in both *Papas II* and *Arkansas–Platte II,* the circuit courts concluded that the term "requirement" in § 136v(b) should be construed as broadly as the U.S. Supreme Court had construed the phrase "requirement or prohibition" in *Cipollone. Papas II,* 985 F.2d at 518; *Arkansas–Platte II,* 981 F.2d at 1179. We believe the *Cipollone, Papas II, Arkansas–Platte II,* and *Yowell* decisions—when read in conjunction—destroy whatever argument Appellants may have had regarding Congress' intent to preempt state common law claims under FIFRA, and the *Connelly* case does not aid Appellants because it deals with a different statute with a narrower preemption provision than those at issue in *Cipollone* and *Yowell.*

Next, Appellants argue that FIFRA is not so pervasive as to have completely occupied the field of pesticide regulation. In their argument, Appellants rely heavily on language in *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). In *Mortier,* the U.S. Supreme Court held that FIFRA did not so pervasively occupy the field of pesticide regulation as to preempt local government regulations governing the use of pesticides. *Mortier,* 501 U.S. at 612–613, 111 S.Ct. at 2486[5]. Even so, *Mortier* does not aid Appellants here for two reasons. First, it does not logically follow from the U.S. Supreme Court's holding in *Mortier* that Appellants' claims are not preempted here. Even though FIFRA is not so pervasive as to occupy the entire field of pesticide regulation, it nonetheless preempts some areas of state law within that field, including state regulation of pesticide labeling. Second, in deciding *Yowell,* this court relied heavily on *Mortier* as implying, via dictum, that any state regulation of labeling or packaging is preempted by FIFRA. *Yowell,* 836 S.W.2d at 63–65. For these reasons, *Mortier* does not support Appellants' contention that FIFRA does not preempt label-based state common law claims.

Appellants next assert that *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.1984) presents a "logical approach to the issue of the interaction between state and federal law in the area of pesticide regulation." In *Ferebee,* the court held that FIFRA did not preempt the plaintiffs' state law failure to warn claim because the court believed FIFRA preempted only those state regulations or actions that "directly order[ ] changes in the EPA-approved labels." *Ferebee,* 736 F.2d at 1542. Because state common law damage awards do not "directly" order defendants to change their EPA-approved pesticide labels, the *Ferebee* court concluded that state common law claims are not preempted by FIFRA. *Ferebee,* 736 F.2d at 1541–1543. This argument fails here because the majority in *Yowell* expressly rejected the *Ferebee* court's reasoning on this issue. *Yowell,* 836 S.W.2d at 65. Thus, we conclude that there is no merit to Appellants' third argument.

---

**5.** It is noteworthy that *Papas I* and *Arkansas–Platte I* were the case authorities upon which the majority in *Yowell* grounded its opinion.

Appellants fourth argument under Point I seeks to avoid the preemptive effect of FIFRA as declared in *Yowell* by contending that, in Counts I and III, they pled not only warranties predicated on the Gastoxin's labeling, but also off-label warranties based on Tri–State's verbal representations. With the foregoing as their premise, Appellants insist that the trial court erred in granting summary judgment on Counts I and III.

Fatal to this argument is the fact that Appellants rely on paragraph 8 of Counts I and III as pleading the off-label warranties, but paragraph 8 is not fact specific. A reader can only learn what type of warranties Appellants intended to plead in Counts I and III by looking at paragraph 8 in context. Paragraphs 8, 9, 10, and 11 of Counts I and III read:

"8. [Respondent] Tri–State Delta Chemical Company and [Respondent] Bernardo Chemicals, Ltd. warranted to [Appellants] that Gastoxin Sachets were fit for the use intended by [Appellants].

"9. The Gastoxin Sachets, when sold by [Respondent], were not as warranted and were not fit for [Appellants'] intended use in that the application of Gastoxin Sachets did not kill the weevils.

"10. The Gastoxin Sachets, when sold by [Respondent], did not contain adequate packaging, labeling, and instructions on proper use and application of the Gastoxin Sachets, and [Respondent] did not provide [Appellants] at the point of sale proper instructions on the proper use and application of the Gastoxin Sachets, and as such the Gastoxin Sachets were not fit for [Appellants'] intended use.

"11. The Gastoxin Sachets, when sold by [Respondent], did not conform to the affirmations of fact made on [Respondent's] labeling, packaging and instructions regarding application and use of the Gastoxin Sachets, and as such the Gastoxin Sachets were not fit for their intended use."

Missouri is a fact-pleading state. *Gibson v. Brewer*, 952 S.W.2d 239, 245[13] (Mo.banc 1997); *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 377, 379[10] (Mo.banc 1993). Therefore, claimants' pleadings "shall contain ... a short and plain statement of the facts showing that the pleader is entitled to relief." Rule 55.05; *Gibson*, 952 S.W.2d at 245. "Fact-pleading presents, limits, defines and isolates the contested issues for the trial court and the parties in order to expedite a trial on the merits." *Id.* Moreover, a historical examination of fact-pleading in Missouri reveals that its purpose is "to enable a person of common understanding to know what is intended." *ITT*, 854 S.W.2d at 377 (quoting Mo. Laws 1848–49, art. VI, § 1, p. 79). Although a claimant need not allege evidentiary facts, he must allege ultimate facts and cannot rely on mere conclusions. *City of Fenton v. Executive Int'l Inn, Inc.*, 740 S.W.2d 338, 339[1] (Mo.App.1987).

Read in isolation, Appellants' paragraph 8 is conclusory and does not comport with the specificity requirements for fact-pleading in Missouri. *See Id.* We are unpersuaded that a "person of common understanding" could read paragraph 8 and know that Appellants intended to plead the existence of an express or implied warranty based on oral statements or representations. We are confirmed in that view when paragraph 8 is read in conjunction with paragraphs 9 through 11. The fact-specific paragraphs (9–11) isolate and focus on Gastoxin's packaging, labeling, manual, and defective instructions as being the contested issue for trial. Defendant's argument to the contrary lacks merit. Since the underlying premise of this fourth argument is faulty, the argument fails.

Based on the foregoing, we deny Appellants' first point in its entirety.

### Point II: Does FIFRA Preempt Appellants' Negligent Misrepresentation Count?

Appellants' second point maintains that the trial court erred in granting summary judgment for Tri–State on Appellants' Count II claim of negligent misrepresentation because FIFRA does not preempt state law tort claims that are unrelated to product labeling and packaging. Appellants assert that their Count II claim of negligent misrepresentation is predicated on two oral representations made by Tri–State employees to Appellants. These representations, Appellants argue, are

off-label representations and are not preempted by FIFRA. *See Yowell*, 836 S.W.2d at 66.

■ In response, Tri–State argues that Appellants cannot automatically avoid FIFRA preemption by alleging that Tri–State's employees made representations apart from those contained in the Gastoxin's labeling. *See Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 665 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). We agree. Even state law claims predicated on off-label representations are preempted by FIFRA if they are mere restatements of the information contained in a pesticide's EPA-approved labeling. *See Id.; Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129 (4th Cir.1995). *See also Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 564 (1st Cir. 1996); *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 562–63 (9th Cir.1995) (quoting *Papas II*, 985 F.2d at 520). Thus, we must consider the two oral representations in question and determine whether they "merely restate" the information contained in the Gastoxin's labeling or are truly off-label representations.

■ There is no dispute that Tri–State did, in fact, make the first representation alleged by Appellants in Count II. As part of its summary judgment motion, Tri–State alleged the following as an undisputed material fact: "Mark Peel, a Tri–State employee, told plaintiffs that the Gastoxin sachets were labeled to treat weevils in peas and that, therefore, it should do the job, i.e., kill weevils." Appellants argue that FIFRA does not preempt claims based on such off-label representations and, consequently, that the trial court erred in concluding that their Count II claim was preempted. We disagree. This representation merely reiterates the sum and substance of the representation contained in the manual accompanying the Gastoxin, i.e., "Gastoxin Sachets are registered with the U.S. Environmental Protection Agency as an aid in the control of ... bean weevil ... rice weevil ... maize weevil ... grainary [sic] weevil ... for the following commodities: ... seed and pod vegetables." Because Tri–State's statement essentially repeats the manual's representations regarding the Gas-

toxin's efficacy, Appellants' claims challenging the statement necessarily challenge the product's labeling and are, therefore, preempted. *See Kuiper*, 131 F.3d at 665.

■ The second representation is a different matter. In Tri–State's summary judgment motion—specifically, in its list of undisputed material facts—it referred the trial court to page sixty of Plaintiff John Maddox's deposition. The deposition contained the following exchange:

"Q [To Plaintiff Maddox] Did they [Tri–State] tell you that the Gastoxin sachets had the same active ingredients as the pellets which you had purchased previously from them?

"A No, they just told me that the product would do the same job that we were used to getting.

"Q And the job is to?

"A Kill weevils.

. . . .

"Q But they told you that the Gastoxin sachets was basically the same product which you had purchased from them previously?

"A They told me that it would do the same job as the Phostoxin pellets that I had been purchasing."

Appellants argue that the representation discussed in Maddox's deposition was an off-label representation made by Tri–State that differed substantially from claims and representations made in the Gastoxin's label and manual and, therefore, constitutes a valid basis for escaping FIFRA preemption. We agree.

Federal cases have recognized that negligent misrepresentation claims predicated on off-label representations are not preempted by FIFRA if the representations "substantially differ" from representations contained on EPA-approved labeling. *Lowe*, 47 F.3d at 130[4]; *Lescs v. Dow Chemical Co.*, 976 F.Supp. 393, 400 (W.D.Va.1997). Tri–State contends that the second representation alleged by Appellants—i.e., that Gastoxin Sachets "would do the same job as the Phostoxin pellets that [Appellants] had been purchasing"—does not "substantially differ"

from representations contained in the Gastoxin's labeling. This argument ignores the fact that nowhere in the Gastoxin's labeling is there a claim or representation that Gastoxin works as effectively as any other product. Thus, the representation appears to differ substantially from any representations contained in the Gastoxin's labeling. To the extent Appellants' second count is grounded on the alleged comparative statement, it is not preempted by FIFRA.

We are confirmed in that view by the reasoning of a number of cases that have considered whether express warranties are preempted by FIFRA. The cornerstone of such cases is the recognition that FIFRA's preemption provision prohibits *states* from imposing labeling or packaging requirements "in addition to or different from" FIFRA's. *Papas II,* 985 F.2d at 520; 7 U.S.C. § 136v(b). These cases reason that "[e]xpress warranties are not grounded in state law, but rather, are *voluntarily assumed obligations commonly employed to gain competitive advantage in the marketplace.*" *Higgins v. Monsanto Co.,* 862 F.Supp. 751, 760 (N.D.N.Y.1994) (emphasis added). *See Cipollone,* 505 U.S. at 525–526, 112 S.Ct. at 2622–2623; *Papas II,* 985 F.2d at 519; *Jillson v. Vermont Log Bldgs., Inc.,* 857 F.Supp. 985, 990–991 (D.Mass.1994). These courts have concluded that because the duties and liabilities imposed under an express warranty are voluntarily assumed by the warrantor and are not grounded in state law, the imposition of liability based on such warranties does not constitute a labeling "requirement ... imposed under state law." *Cipollone,* 505 U.S. at 526, 112 S.Ct. at 2622; *Papas II,* 985 F.2d at 519; *Higgins,* 862 F.Supp. at 760; *Jillson,* 857 F.Supp. at 990. Thus, an action on a voluntarily-assumed express warranty is not preempted by FIFRA. *Papas II,* 985 F.2d at 519; *Higgins,* 862 F.Supp. at 760; *Jillson,* 857 F.Supp. at 990. We believe this reasoning is apropos to the off-label representation here at issue.

We find that the comparative representation alleged by Appellants was not a mere restatement of information contained in the Gastoxin's EPA-approved labeling. In addition, we believe that if Tri–State did, in fact, make this representation, it did so voluntarily and in an effort "to gain a competitive advantage in the marketplace." *See Higgins,* 862 F.Supp. at 760. Consequently, we hold that Appellants' negligent misrepresentation claim is not preempted by FIFRA insofar as it is predicated on the second off-label representation alleged by Appellants.

We affirm the judgment for Tri–State Delta Chemicals, Inc. on Count I; we affirm the judgment for Bernardo Chemicals, Ltd. on Count III; we reverse the judgment for Tri–State Delta Chemicals on Count II and remand for further proceedings.

GARRISON, C.J., and BARNEY, J., concur.