**IRONITE PRODUCTS CO., INC. & Gas Sweetner Associates, Inc., d/b/a Sulfatreat Company, Respondents,**

v.

**Alvin SAMUELS and Mark Samuels, Appellants.**

**No. ED 76474.**

Missouri Court of Appeals, Eastern District, Division Four.

April 18, 2000.

**568**

Charles S. Kramer, St. Louis, for appellants.

Michael H. Wetmore, Omri E. Praiss, St. Louis, for respondents.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

The case comes to this court for a second time. In the first appeal, this court reversed the trial court's judgment entered for this declaratory judgment action. *Ironite Products Co., Inc. v. Samuels*, 985 S.W.2d 858 (Mo.App. E.D.1998). Alvin Samuels and Mark Samuels (collectively, the Samuels) filed a motion with the trial court, requesting leave to reopen the case and for a revised judgment in accordance with this court's mandate and opinion. The trial court denied the Samuels' request to reopen the case and entered a revised judgment. The Samuels appeal. We affirm.

In 1972, Irwin Fox and Alvin Samuels formed Ironite Products Co., Inc. (Ironite) to market a chemical product for oil drilling. "The articles of incorporation set forth all of the required guidelines for operation of Ironite." *Id.* at 859. Irwin Fox and Alvin Samuels also entered into the following oral agreements in 1972 (1972 oral agreements): Irwin Fox would run the Sales/Marketing Division in St. Louis, Missouri and Alvin Samuels would work in New Orleans, Louisiana in the Research and Development/Technical Services Division; the two would share decision making responsibilities and take equally from the company; if successful the two would ask their sons to join them in their respective offices; and the two divisions would be equal. The 1972 oral agreements were never reduced to writing. Irwin Fox and Alvin Samuels later incorporated Gas Sweetner Associates, Inc. d/b/a Sulfatreat Co. (Gas Sweetner) to market the same chemical product to the natural gas industry. Ironite and Gas Sweetner were separate entities in name and market only, and the two companies were functional equivalents. *Id.* at 859–60.

In 1989, Irwin Fox and Alvin Samuels agreed that the companies were stable and each invited one son to join them pursuant

to the 1972 oral agreements. Richard Fox began working in the St. Louis office while Mark Samuels began working from the New Orleans office. About this time, Richard Fox requested that both Ironite and Gas Sweetner enter into written agreements regarding structure, operation and succession issues. Both families agreed to the request. Richard Fox drafted the documents to embody the prior incorporation instruments and the oral agreements. On September 7, 1990, the shareholders of Ironite and Gas Sweetner (collectively, the Companies) adopted bylaws that empowered the Board of Directors to manage the Companies' business affairs and to fix the salaries of the officers without limitation. The shareholders also entered into Restrictive Stock Agreements for the Companies. After speaking informally with a Louisiana attorney about the bylaws and Restrictive Stock Agreements, Alvin Samuels modified the documents by making handwritten changes. The Fox shareholders accepted the changes. All parties signed the incorporation documents, bylaw agreements and restrictive stock covenants and these became the controlling corporate guidelines. *Id.* at 860–61.

Thereafter, the relations between the two families declined. In August 1993, Alvin Samuels wrote to Irwin Fox and Richard Fox suggesting they would benefit from an "objective tie-breaking director" in making business decisions for the Companies. Alvin Samuels subsequently brought an action seeking the appointment of a provisional director. Later in 1993, Irwin Fox died in an automobile accident and Richard Fox assumed his father's presidency of the Companies. On April 6, 1994, the court appointed a provisional director. A month later the director voted to unequally compensate Alvin Samuels and Richard Fox. Alvin Samuels protested, but before any action was taken, the director resigned. Clifford L. Goetz officially replaced the first provisional director on January 1, 1996. Goetz would later vote to unequally compensate Alvin Samuels and Richard Fox and to move Mark Samuels from New Orleans to the St. Louis office. In January 1997, the Samuels brought an action in New Orleans, naming Richard Fox and the Companies as defendants. Based on the "parties long-standing agreement," the Samuels sought equal compensation for Alvin Samuels and Richard Fox and retention of Mark Samuels in the New Orleans office. The parties to this suit agreed that the Samuels would dismiss their Louisiana action and that the disputes would be resolved as part of an action in the Circuit Court of the County of St. Louis. The Companies then filed the present action seeking a declaratory judgment that the Companies' Board of Directors had authority to make decisions by exercising its business judgment in the best interest of the Companies. *Id.* at 861.

After trial, the court entered judgment and declared, among other things, that Alvin Samuels and Richard Fox were to be equally compensated and that Mark Samuels was entitled to work in the Companies' New Orleans office. The Companies appealed and this court reversed. *Id.* In the first point on appeal, the Companies argued that the trial court erred in ruling that Richard Fox and Alvin Samuels must be equally compensated. *Id.* This court agreed and held that under the parol evidence rule the trial court erred in permitting evidence of the 1972 oral agreements to contradict the Companies' 1990 bylaws.[1] *Id.* at 861–62. This court also agreed with the Companies' second point that the Board of Directors had the authority to reorganize the Companies' structure and could relocate Mark Samuels to the St. Louis office. *Id.* at 862–63. The opinion provided that "For the various reasons

1. The bylaws of the Companies both provide in Article IV, Section Nine, *"Salaries:* The salaries of the officers shall be fixed from time to time by the Board of Directors and no officer shall be prevented from receiving such salary by reason of the fact that he is also a director of the corporation."

discussed herein, we reverse and remand." *Id.* at 861. After the opinion was issued, the Samuels filed a motion for rehearing arguing this court "overlooked or misinterpreted" the following "material matters of both law and fact": (1) the trial court's ruling that the Companies' actions after executing the 1990 written documents estopped the Companies from denying the obligation to maintain the equal authority and salary structure for the division heads or the right of Mark Samuels to work in New Orleans; (2) the 1990 written agreements were not integrated agreements and, therefore, would not preclude consideration of parol evidence by the trial court; (3) the term "technical services" in the 1990 written agreements *did not have a* meaning that could be determined without consideration of intent or context and, therefore, the trial court was not precluded from considering parol evidence; (4) a contract should be construed to give every provision meaning whenever possible; (5) the trial court's ruling that its judgment was based on three separate, independent contracts that did not contradict each other; and (6) the trial court's "specific finding" that the Companies' actions did not constitute valid business judgments.[2] This court denied the Samuels' motion. The Missouri Supreme Court denied the Samuels' later filed application for transfer. This court then issued the mandate that stated the trial court's judgment was "reversed in accordance with this Court's opinion."

After the mandate was issued, the Samuels filed a motion with the trial court requesting leave to reopen the case and for a revised judgment in accordance with this court's mandate and opinion. The trial court denied the Samuels' request to reopen the case and entered a revised judg-

ment. The court declared, among other things, that the Board of Directors could determine the amount of compensation, in unequal amounts, to be paid to the Companies' officers and that the Board of Directors had the authority to have Mark Samuels work five days a week in St. Louis. The Samuels appeal, raising three points.

In their first point, the Samuels argue that the trial court erred in denying their request to reopen the case. The trial court stated in its denial, "After considering [the Samuels'] request, this court believes it has no discretion, authority or jurisdiction to reopen this case on general remand to issue a revised judgment with findings on the issues not addressed" by this court's opinion. The Samuels contend that after a general remand a trial court has discretion to reopen a case. This court's mandate stated that the trial court's judgment was "reversed in accordance with this Court's opinion" and provided no other directions except regarding costs.

■■■ A general remand leaves all issues open to consideration for the trial court after remand. *McDonough v. Liberty Mutual Insurance Co.,* 968 S.W.2d 771, 773 (Mo.App. E.D.1998).[3] However, the mandate is not to be read and applied in a vacuum. *Frost v. Liberty Mutual Insurance Co.,* 813 S.W.2d 302, 305 (Mo. banc 1991); *Id.* The opinion is part of the mandate and must be used in interpreting the mandate. *Id.* Accordingly, proceedings on remand should be in accordance with the mandate and the result contemplated in the appellate court's opinion. *Id.* Furthermore, a general remand "has the effect of a direction to proceed in accordance with

**2.** The Samuels also requested, as an alternative to rehearing, an application for transfer to the Missouri Supreme Court.

**3.** To the extent the trial court's judgment could be interpreted to suggest that a trial court *never, under any circumstances,* has authority to consider new evidence after a gen-

eral remand, we disagree. Regardless, a correct result will not be set aside even if a trial court gave a wrong or insufficient reason for its judgment. *Harvey v. Village of Hillsdale,* 893 S.W.2d 395, 398 (Mo.App. E.D.1995). In this case, the trial court properly denied the Samuels' request.

the holdings entered by the opinion of the appellate court as the law of the case." *Outcom Inc. v. City of Lake of St. Louis,* 996 S.W.2d 571, 574 (Mo.App. E.D.1999).

The law of the case doctrine governs successive appeals involving the same issues and facts. *Bellon Wrecking & Salvage Co. v. David Orf, Inc.,* 983 S.W.2d 541, 546 (Mo.App. E.D.1998); *McClelland v. Ozenberger,* 841 S.W.2d 227, 231 (Mo. App. W.D.1992). Under this doctrine, the appellate decision becomes the law of the case in a subsequent proceeding in the same cause and precludes re-examination of issues decided in the original appeal. *McClelland,* 841 S.W.2d at 231. This rule applies to matters decided by the appellate court's opinion, either directly or by implication. *Missouri Board of Pharmacy v. Tadrus,* 926 S.W.2d 132, 137 (Mo.App. W.D.1996).

In the first appeal, this court agreed with the Companies' argument that the trial court erred in ruling that Richard Fox and Alvin Samuels must be equally compensated. *Ironite Products Co.,* 985 S.W.2d at 861–62. This court held that under the parol evidence rule the trial court erred in permitting evidence of the 1972 oral agreements to contradict the Companies' bylaws that "clearly stated" that compensation for the Companies' officers was at the discretion of the Board of Directors. *Id.* In their motion to reopen the case and for a revised judgment, the Samuels stated they wanted to reopen the case:

> for the sole purpose of introducing one new exhibit relating to the parol evidence finding ... The parol evidence ruling of [this court] is based on a defense and theory never pled by the Plaintiff Companies, never argued at trial, and never discussed. It is based on

the fact that the cold record appeared to indicate that the Companies['] bylaws were a later agreement, when in actuality the pertinent provision relied upon by [this court] was merely a restatement of bylaws that were executed PRIOR to the 1972 agreement with Al Samuels. The Samuels would seek leave to introduce the prior bylaws, and to make that point known, prior to [the trial] court issuing its revised judgment. Upon adopting this approach, this court would then be in a position to determine whether this new evidence takes the revised judgment out of the realm of the law of the case, due to the existence of new and probative additional evidence.

The purpose of the Samuels' arguments to the trial court and on appeal is to demonstrate that this court erred in the parol evidence holding. The Samuels argue that reopening the case "would reveal that certain material factual assumptions which underlie this Court's application [of the parol evidence rule] on the cold appellate record are not in fact present in the case at bar." The Samuels contend that the evidence on remand would show that the "five criteria" for application of the parol evidence rule are not present in this case.[4] The Samuels also contend that the interests of justice and fair adjudication favor reopening the case.

Under the law of the case doctrine, a "'former adjudication is not only the law of the case as to all questions directly raised and passed upon but it is also the law of the case as to matters which arose prior to the first appeal and which might have been raised thereon but which were not raised or presented.'" *Bellon Wrecking & Salvage Co.,* 983 S.W.2d at 546 (quoting *Norris v. Bristow,* 361 Mo. 691, 236 S.W.2d 316, 319 (1951));

4. The Samuels list the following as the "five criteria:" (1) the written document is a subsequent agreement; (2) the two agreements are on the same subject and were adopted for the same purpose and there was no separate consideration; (3) the subsequent written agreement is an integrated agreement; (4) the earlier agreement would be inconsistent with or would alter the subsequent writing; and (5) the subsequent written agreement is unambiguous.

*See Shahan v. Shahan,* 988 S.W.2d 529, 533 (Mo. banc 1999); *Lehnig v. Bornhop,* 896 S.W.2d 714, 715 (Mo.App. E.D.1995). Evidence received, with or without objection, that violates the parol evidence rule must be ignored and a decision must be made on the writing alone. *Ironite Products Co.,* 985 S.W.2d at 862. The parol evidence rule is a rule of law and not a rule of evidence. *Id.* If the Samuels had evidence demonstrating that the parol evidence rule was not applicable, then they could have presented it at trial and are not permitted to introduce this evidence for the first time after remand.

The trial court stated in its revised judgment that under the Companies' bylaws the Board of Directors has the authority and discretion to determine the compensation to be paid to the Companies' officers. The trial court's judgment and denial of the Samuels' request to reopen the case was precluded by the law of the case doctrine and was consistent with this court's mandate and opinion. The Samuels' first point is denied.

The Samuels argue in their second point that the trial court erred when it denied their request to restate in the revised judgment its "original finding" that the Companies' attempts to force Mark Samuels to relocate to St. Louis "failed the business judgment test." In the first appeal, this court agreed with the Companies' argument that the Board of Directors had the authority to reorganize the Companies' structure and could relocate Mark Samuels to the St. Louis office. *Ironite Products Co.,* 985 S.W.2d at 862. In addressing the issue, this court held that the Board of Directors was required to use its best independent discretion and judgment when making decisions, and that we would not interfere with these decisions absent fraud, illegal conduct or an irrational business judgment. *Id.* This court then found that Clifford Goetz and Richard Fox articulated rational reasons to relocate Mark Samuels to the St. Louis office. *Id.* We concluded by stating that the Board of Directors' reorganization was a proper use of the Board of Directors' business judgment. *Id.* at 863. If the trial court stated in its revised judgment that the Companies' attempts to relocate Mark Samuels to St. Louis did not constitute a valid business judgment, this would be contrary to this court's first opinion.

■ The crux of the Samuels' argument is that this court had an " Expressed Mistaken View of the Record" in the first opinion. In the first opinion, this court stated:

> We will not interfere with the decisions of the Board of Directors absent fraud, illegal conduct, or an irrational business judgment. *Neidert v. Neidert,* 637 S.W.2d 296, 301 (Mo.App. S.D. [1982] ). In making decisions, the Board of Directors is required to use its best independent discretion and judgment. *Id.* Goetz and Richard [Fox] both articulated rational reasons to relocate Mark [Samuels] to the Saint Louis office and to implement the organizational changes of the Companies. We will not interfere with that decision, despite a possible detriment to the corporations.
>
> There is no allegation that the Board of Directors perpetrated fraud or made an irrational business judgment. The only accusation is that the Board of Directors lacked the authority to implement its decisions.

*Ironite Products Co.,* 985 S.W.2d at 862. The Samuels contend that this court's statement that "There is no allegation that the Board of Directors perpetrated fraud or made an irrational business judgment" was a mistake of fact. On a second appeal, an appellate court has discretion to refuse to apply the law of the case doctrine where there is a mistake, a manifest injustice or an intervening change of law. *State v. Graham,* 13 S.W.3d 290, 293 (Mo. banc 2000); *Student Loan Marketing Ass'n. v. Raja,* 914 S.W.2d 825, 830–31 (Mo.App. W.D.1996).

The Samuels cite the following conclusions of law by the trial court [5]:

27. The vote of Director Goetz designed to put the attempted transfer of Mark Samuels and restructure of the Companies at issue in court, is not a proper basis for directorial decision.

28. In the usual case raising questions regarding discretion and business judgment, the actions of the directors and officers of a Corporation, which are within their authority and are made in good faith, uninfluenced by any other consideration other than the best interest of the Corporation, are not subject to challenge. The Courts will not interfere with the discretion of directors so long as their direction was exercised in a fair and honest manner.

29. In this case, the evidence at trial indicated no such honest belief or fair motivation lies behind the Companies['] and Richard Fox's attempt to transfer Mark Samuels to St. Louis, MO, and his attempt to restructure the Companies. The Court has found no evidence of any real company need or reason to transfer Mark Samuels to St. Louis, MO.

We note that in the next paragraph, number 30, the trial court concluded that the agreements that provided for Mark Samuels to work in New Orleans and documents that provided for corporate and salary structure to be maintained, **"obviate the need for inquiry into the business judgment of the directors in that regard."** (emphasis added). Accordingly, the trial court's conclusions in paragraphs 28 and 29 notwithstanding, the court concluded in paragraph 30 it was unnecessary to decide whether a decision to relocate Mark Samuels was a valid business judgment.

"The business judgment rule vests the directors and shareholders with wide latitude in making judgments that affect the running of the corporation." *Herbik v. Rand,* 732 S.W.2d 232, 235 (Mo. App.1987). Here, the trial court never concluded that the Board of Directors perpetrated fraud or made an irrational business judgment. A director's motivation is different than whether there was a rational basis for a decision. A poor judgment, however motivated, does not equate to fraud or irrationality. The trial court did conclude that there was "no evidence of any real need or reason" or an "honest believe or fair motivation" for the decision to transfer Mark Samuels to St. Louis. However, this court specifically found that Clifford Goetz and Richard Fox articulated rational reasons to relocate Mark Samuels. *Ironite Products Co.,* 985 S.W.2d at 862. Contrary to the Samuels' assertion, this court's first opinion was not based on an "Expressed Mistaken View of the Record," regarding an allegation of fraud or irrationality. Furthermore, the Samuels raised this argument in their motion for rehearing that this court denied. *See McClelland,* 841 S.W.2d at 231. The Samuels' second point is denied.

The Samuels argue in their third point that the trial court erred in failing to include in the revised judgment certain findings it made prior to this court's opinion. The Samuels contend that the following three findings should have been included in the revised judgment; the Companies' agreements with Mark Samuels were existing and enforceable, the Companies were estopped from claiming that the 1990 documents prepared by Richard Fox "did not carry forward" the agreements with Alvin Samuels and Mark Samuels, and the Companies waived the claims they were asserting in this case. The Samuels raised these arguments in their original brief. The law of the case

---

5. The Samuels also cite certain other findings by the trial court that they claim support the trial court's "finding" that the Board of Directors did not exercise valid business judgment.

doctrine applies to matters decided by the appellate court's opinion, either directly or by implication. *Tadrus,* 926 S.W.2d at 137. If the trial court were to include these findings in its revised judgment, this would be contrary to this court's holdings in the first opinion. The trial court did not err in not including these findings in the revised judgment and the Samuels' third point is denied.

The judgment of the trial court is affirmed.[6]

MARY K. HOFF, J. and ROBERT E. CRIST, S.J., Concur.

---

**6.** The Companies' motion for sanctions and damages for frivolous appeal is denied.