M & H ENTERPRISES, Gary Hogan and John Maddox, Plaintiffs–Appellants,

v.

TRI–STATE DELTA CHEMICALS, INC., and Bernardo Chemicals, Ltd., Defendants–Respondents.

No. 23425.

Missouri Court of Appeals,
Southern District,
Divison One.

Jan. 25, 2001.

Kenneth L. Dement, Jr, Dement, Vandivort & Dement, Sikeston, for appellant.

Wendell W. Crow, Crow, Reynolds, Preyer, Shetley & McVey, Kennett, Elizabeth R. Jones, Michael L. Beatty & Assoc., P.C., Denver, CO, Gary W. Callahan, United Agri Products, Inc., Greeley, CO, for Tri-State Delta.

PARRISH, Presiding Judge.

M & H Enterprises is a partnership. Gary Hogan and John Maddox are its partners. The partners and the partnership are referred to in this opinion, collectively, as "M & H." M & H is engaged in the business of growing and brokering agricultural products. This is an appeal of a judgment for Tri–State Delta Chemicals, Inc., (Tri–State) in a negligent misrepresentation action brought by M & H. This court affirms.

This is the second time this case has been before this court. In *M & H Enterprises v. Tri–State Delta Chemicals, Inc.,* 984 S.W.2d 175 (Mo.App.1998), (the prior appeal) this court affirmed a summary judgment for Tri–State and Bernardo Chemicals, Ltd., (Bernardo) on two counts, Counts I and III, of a three-count petition. The summary judgment was reversed as to the remaining count, Count II. The case was remanded for further proceedings.

Following remand, Tri–State filed a second motion for summary judgment. That motion was granted and judgment entered for Tri–State by means of docket entry dated December 27, 1999. It states:

> The Court, being fully advised, does hereby *Sustain* Defendant Tri–State's Motion for Summary Judgment against [M & H] on [M & H's] claim of Negligent Misrepresentation. The Court finds that the representations made by Tri–State's employees were true, and further, that Tri–State did not fail to exercise reasonable care in making the statements. The Court further finds that any damages suffered by [M & H] were caused by the improper labeling instructions approved by the EPA. Summary Judgment entered accordingly.

A copy of the docket entry is included in the legal file immediately before the copy of the notice of appeal. It reveals the trial judge's handwritten initials alongside and to the left of the docket entry. The judge's typewritten name appears beneath the docket entry.

### The Judgment

Tri–State filed a motion to dismiss this appeal on the grounds that "[t]he docket entry from which M & H appealed does not satisfy ... requirements [of Rule 74.01(a)] and is therefore not a final appealable judgment." Tri–State argues the docket entry does not constitute a judgment because it is "not signed or even initialed by the [j]udge"; that it "is not clearly denominated a judgment." The motion was taken for determination with the case.

Rule 74.01(a) provides that "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed. A judgment may be a separate document or included in the docket sheet of the case."

*Kessinger v. Kessinger,* 935 S.W.2d 347, 349 (Mo.App.1996), explains that the signing requirement of the rule "does not necessarily require that the actual signature of the judge appear," but "a mere initialing could be a signing ... even though that is not the judge's ordinary signature." *A.L. v. Peeler,* 969 S.W.2d 262, 265 (Mo.App. 1998), explains, "Whether the designation 'judgment' appears as a heading at the top of the writing, within the body of the writing in some other manner, or in the entry on the docket sheet, it must be clear from the writing that the document or entry is being 'called' a 'judgment' by the trial court."

The copy of the docket entry with the judge's initials that is included in the legal file displays two date-filed stamps of the circuit clerk. One appears about one-third of the distance from the top of the page beneath the docket entry. The date shown is December 27, 1999. Immediately to its left is the handwritten designation,

"cc:" followed by the handwritten names of attorneys of record in the case. A handwritten notation is shown on the bottom half of the page noting "case removed from trial docket date of 1–13 & 1–14–2000." What appears to be the signature of the circuit clerk is handwritten below the notation. The second date-filed stamp appears below it. Its date is January 13, 2000, the same filing date reflected on M & H's notice of appeal. It is included with the documents the circuit clerk certified as "true copies of portions of the proceedings previously reduced to writing and filed in the trial court." The record on appeal, therefore, includes a copy of the docket entry dated December 27, 1999, with the initials of the trial judge thereon and a "filed" stamp dated December 27, 1999. Although this is not a procedure this court would recommend for affixing signatures to judgments, this court concludes, on the basis of the record before it, that the signature requirement of Rule 74.01(a) for judgments has been met.

■ The requirement that a judgment be denominated as such has also been complied with. The December 27, 1999, docket entry recites findings sufficient to determine the motion for summary judgment that was before the court. It is followed by the statement, "Summary Judgment entered accordingly." The trial court's statement suffices as a denomination of the entry as a judgment. By acknowledging, in the past tense, that summary judgment was entered, the trial court "called" the text of its entry a judgment. The motion to dismiss the appeal is denied.

### M & H's Appeal

The facts that gave rise to this action are set out in the prior appeal. Those facts will not be repeated except as may be necessary to dispose of the issues raised in this appeal.

The opinion in the prior appeal addressed a representation made by Tri–State that an insecticide it sold to M & H, Gastoxin sachets, " 'would do the same job as the Phostoxin pellets that [M & H] had been purchasing.' " 984 S.W.2d at 182, quoting deposition testimony of John Maddox. It held "the comparative representation alleged by [M & H] was not a mere restatement of information contained in the Gastoxin's EPA-approved labeling"; that if Tri–State in fact made the representation, it was done voluntarily and in an effort to gain a marketplace competitive advantage. *Id.* at 183. On that basis, the prior opinion concluded that the negligent misrepresentation claim in M & H's Count II was not preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA); that it was predicated on an off-label representation allegedly made by an agent of Tri–State.

Following remand, Tri–State moved for summary judgment alleging M & H could not show the required elements for a claim of negligent misrepresentation. The trial court found the representations made by Tri–State were true; that Tri–State did not fail to exercise reasonable care in making the challenged representations; that any damages suffered by M & H were caused by improper labeling instructions approved by the Environmental Protection Agency (EPA).

■ M & H's first point on appeal argues the trial court erred in granting Tri–State's motion for summary judgment because the judgment did not comply with requirements of Rule 74.04(c)(1).

Rule 74.04 prescribes the procedure for seeking summary judgment. Rule 74.04(c)(1) states what a motion for summary judgment must contain. It provides:

*Motions for Summary Judgment.* Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact

as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts. Each motion for summary judgment shall have attached thereto a separate legal memorandum explaining why summary judgment should be granted and affidavits not previously filed that are relied on in the motion.

The body of Tri–State's motion for summary judgment states:

## TRI–STATE DELTA CHEMICAL, INC.'S MOTION FOR SUMMARY JUDGMENT ON NEGLIGENT MISREPRESENTATION CLAIM

Defendant Tri–State Delta Chemicals, Inc. ("Tri–State") pursuant to Missouri Rule of Civil Procedure 74.04, moves this Court for an order granting summary judgment in its favor on Plaintiff's negligent misrepresentation claim,

### UPON THE GROUNDS THAT:

1. This Defendant attaches hereto Defendant's Memorandum, together with Exhibits referred to herein, which are incorporated herein by reference as though fully set forth in words and figures.

2. On the record before the court, Tri–State states that there is no genuine issue as to any material fact in this cause, and Tri–State is entitled to a Judgment as a matter of law.

WHEREFORE, Defendant Tri–State Delta Chemicals, Inc., respectfully moves this court to make and enter its order granting Judgment in favor of said Defendant, and for such other and further relief as the court may seem meet [sic] and proper in the premises.

In *Moore Equipment Co. v. Halferty*, 980 S.W.2d 578 (Mo.App.1998), the Western District of this court observed:

"The purpose underlying the requirements of Rule 74.04 is threefold: to apprise the opposing party, the trial court and the appellate court of the specific basis for the movant's claim of entitlement to summary judgment." *Miller v. Ernst & Young*, 892 S.W.2d 387, 389 (Mo.App.1995) (*citing Johns v. Continental Western Insurance Company*, 802 S.W.2d 196, 197 (Mo.App.1991)). A motion which fails to meet the specificity requirement of Rule 74.04(c) is deficient. *Moss v. City of St. Louis*, 883 S.W.2d 568, 569 (Mo.App.1994).

*Id.* at 581.

*Moore* further explains that requirements of a properly drafted summary judgment motion are not negated by incorporating by reference a memorandum of law. *Id. Moore* points out, however, that "[c]ompliance with Rule 74.04 must be tempered by whether or not the underlying purposes of the rule have been met. If the issues are clear to the parties, the trial court and the appellate court, failure to strictly comply with the rule does not, *per se*[,] preclude the granting of a summary judgment and/or its affirmance by an appellate court." *Id.*

Tri–State's motion for summary judgment does not comply with the requirements of Rule 74.04(c)(1). The memorandum filed with the motion and incorporated by reference as part of the motion, however, is not a mere narration of applicable law. It includes 13 separately numbered paragraphs of what are asserted as being undisputed facts with specific references to pleadings and discovery. M & H filed a memorandum in the trial court opposing the motion for summary judgment. M & H's memorandum points out the "undisputed facts" set forth in Tri–State's memorandum with which it disagrees. The trial court obviously was sufficiently apprised of the basis for

Tri–State's motion. This court, likewise, is able to discern the basis for the motion.

Although this court would not recommend the practice followed by Tri–State in drafting its motion for summary judgment for future use, the purposes of Rule 74.04 were met. Because those purposes were met, Point I is denied.

■ M & H's Point II asserts the trial court erred in granting summary judgment because the record before the trial court disclosed sufficient evidence to support all elements of a claim for negligent misrepresentation by Tri–State.

■ A cause of action for negligent misrepresentation requires proof that: (1) the speaker supplied information in the course of his or her business because of some pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss. *General Elec. Capital Corp. v. Rauch,* 970 S.W.2d 348, 354–55 (Mo.App. 1998). "A negligent misrepresentation claim is premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing." *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 689 (Mo.App.1994). Failure to prove any one of the five elements of negligent misrepresentation defeats a litigant's claim. *Wellcraft Marine v. Lyell,* 960 S.W.2d 542, 546 (Mo.App. 1998).

The statement to which Count II, M & H's claim for negligent misrepresentation, was directed was an assertion on behalf of Tri–State that the insecticide Gastoxin would do the same job as Phostoxin pellets. M & H had previously purchased Phostoxin pellets from Tri–State for use in controlling weevils in stored purple hull peas. The trial court found the statement was true; that Tri–State did not fail to exercise reasonable care in making the statement. The trial court found that there was no evidence from which element (2), identified above, could be found.

The active ingredients in Gastoxin and Phostoxin are the same, aluminum phosphide. Gastoxin contains 57% aluminum phosphide; Phostoxin contains 55% aluminum phosphide. Both were labeled as effective in controlling weevils in seed and pod vegetables.

The deposition testimony of M & H's expert witness, Dr. John Sanders, was that both Gastoxin and Phostoxin were efficacious if used to treat purple hull peas; that the use of the sachets to kill weevils in their purple hull peas was a correct and intended use of the product. He stated that Gastoxin should have provided complete control if the product had been properly applied.

M & H did not discuss with Tri–State how Gastoxin sachets were to be applied. M & H was aware that the manual had to be read and its instructions followed for effective use of the product. Dr. Sanders testified that the Gastoxin manual had inadequate directions for the product's use in the type of storage used by M & H. He referred to a specific passage in the instructions saying:

> And I'm referencing Page 10, Item 4 under the outline "d," Procedures for Flat Storage—which this one, that includes farm style bins, which these are, and which were the bins that were used at the time-that reads as such: "Determine application procedure to be used. This can include uniform addition as the bin is filled or surface application."

There's conflicting evidence on that particular item. Mr. Griffith with Bernardo has made the statement that the Gastoxin Sachets could be more efficiently utilized if some were placed at the bottom of the bin or—at the time of filling or some other manner, other than just surface application.

Dr. Sanders concluded that the instructions provided by the manufacturer were "improper to the point that if surface application does not give total control of the insects, as Bernardo has claimed, then that should be included as a part of the manual." He observed, "In my opinion, had the correct wording and verbiage been included in the manual for the proper procedure and technique, in this type storage, the Gastoxin would have performed and would have been utilized as has been suggested by Mr. Griffith and would have been effective; the problem could have been avoided."

Dr. Sanders made similar observations when asked whether phosphine, the active ingredient in Gastoxin sachets, was a proper fumigant for the use and treatment of weevils and purple hull peas. He stated the substance was accepted worldwide as one of the most widely utilized fumigants for stored grain and stored peas. He noted, "With the successes that have been found in the past, I think had the manual been correct and the utilization—and I certainly believe it would have been utilized according to the manual; I think that it was—that the problem would have been avoided, yes."

The record on which the trial court granted Tri–State's motion for summary judgment reveals no evidence that Tri–State's statement that Gastoxin sachets would do the same job as Phostoxin pellets was false. The record supports the determination that there was no genuine issue concerning the determination that Gastoxin is as effective as Phostoxin if applied correctly. Point II is denied.

■ Point III asserts that the trial court erred in entering judgment for Tri–State because the issues on which the trial court relied were adverse to the prior adjudication in the case and, therefore, not consistent with the law of the case as previously determined. M & H contends any issue asserted in Tri–State's second motion for summary judgment had either been previously raised or was an issue that might have been raised.

■ A former adjudication is the law of the case as to all questions directly raised and passed upon and on matters that arose before the first appeal that might have been raised but were not. *Ironite Products Co., Inc. v. Samuels*, 17 S.W.3d 566, 571 (Mo.App.2000). The law of the case doctrine, however, does not apply to new issues introduced following remand by amended pleadings. *Davis v. J.C. Nichols Co.*, 761 S.W.2d 735, 742 n. 6 (Mo.App.1988).

Tri–State's first motion for summary judgment, the one addressed in the prior appeal, was directed to the question of preemption under the FIFRA. The issue was whether federal law precluded an action from being maintained based on state law. This court held that all but one of M & H's claims were based on EPA-approved labeling; that those claims were preempted by the FIFRA. One claim was not. This court held that the trial court could proceed to determine that claim on the basis of Missouri law. *M & H Enterprises*, 984 S.W.2d at 183. The case was remanded as to that claim. On remand Tri–State filed a second motion for summary judgment asserting, as a matter of Missouri law, that M & H was not entitled to recover on its claim of negligent misrepresentation.

Under the facts of this case, Tri–State's second motion for summary judgment filed following remand was the equivalent of an amended pleading that introduced a new

issue that required different evidence than had been required to address the claim of preemption presented by the first motion for summary judgment. The law of the case as determined by the prior appeal did not preclude the trial court from addressing the issues presented by the second motion for summary judgment. Point III is denied. The judgment is affirmed.

MONTGOMERY, J., concurs

SHRUM, J., concurs in separate opinion filed.

SHRUM, Judge, concurring.

I concur. I write separately to repeat my position, originally set forth in *Yowell v. Chevron Chemical Co.*, 836 S.W.2d 62 (Mo.App.1992) that this court should never have embraced the view that FIFRA (7 U.S.C. § 136 et seq.) impliedly preempted state common law tort suits against manufacturers of EPA-regulated pesticides to the extent such claims are based on claims of inadequate labeling. *Id.* at 66–69. As noted there, we should never "proceed upon the presumption that the EPA is infallible." *Id.* at 69. Many reasons exist for this observation, not the least of which is the prolific hiring of EPA employees by private firms. Apparently, such hiring practices proliferate in the hope that former employees can use their expertise and acquaintanceship with EPA personnel to "smooth the way" when labeling requests are submitted to the EPA.

I hasten to add there is no evidence of such a practice in this record. There is, however, evidence that the EPA-approved labeling, for whatever reason, was inadequate in this case and that the defects in labeling caused or contributed to cause Plaintiffs' losses. Because *Yowell* compelled a finding of preemption in *M & H Enterprises v. Tri–State Delta Chemicals, Inc.*, 984 S.W.2d 175 (Mo.App.1998) (*Tri–State I*), it appears Plaintiffs are left with

no remedy. Such result is especially regrettable considering the evidence from which a jury of twelve Missouri citizens could have found inadequate labeling that caused damage. Although *Tri–State I* cannot be changed and although I concur in the principal opinion, I persist in my belief that *Yowell* was wrongly decided. This case shows why Yowell and its progeny should be overruled.